William P. CLARK *v.* STATE of Arkansas

CR 86-142                                   725 S.W.2d 550

Supreme Court of Arkansas
Opinion delivered March 9, 1987

*Raymond Harrill*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant was charged with terroristic threatening. Without the knowledge of his counsel and without bringing it to the attention of the judge, Honorable Floyd Lofton, the appellant filed a motion asking Judge Lofton to recuse. In the motion the appellant accused Judge Lofton of criminal misconduct. Upon learning of the motion and its contents, Judge Lofton ordered the appellant to show cause why he should not be held in contempt. The appellant was convicted of criminal contempt, and we reversed, holding Judge Lofton should have recused from the contempt proceeding because he was obviously embroiled in a personal dispute with the appellant. *Clark* v. *State*, 287 Ark. 281, 697 S.W.2d 895 (1985). We remanded the case for a hearing before a different judge. In our first opinion we said:

> The appellant's final argument is that the mere filing of the motion to recuse was not contempt. While this situation could fit within the perimeters of our definition of

criminal contempt, *see Ex parte Stroud*, 167 Ark. 331, 268 S.W. 13 (1925), the underlying factual question will have to be resolved by the trial court upon remand.

[287 Ark. at 227, 697 S.W.2d at 898.]

A hearing was held before Judge Jack Lessenberry, who found the appellant guilty of criminal contempt. We reverse and dismiss because the facts found in the second hearing are not sufficient to form the basis of the contempt conviction.

The motion which formed the basis of the contempt charge accused Judge Lofton of a number of things including illegally incarcerating the appellant, conspiring with a doctor and deputy prosecutor to have the appellant adjudged mentally incompetent for the purpose of harassment and intimidation, depriving the appellant of the right to defend himself by appointing a public defender, sending public defenders to tell the appellant the judge would put him in a mental institution unless he allowed the public defenders to represent him, unprofessionally slandering the appellant by accusing him of "not playing with a full deck" and being "thick skulled," committing witness bribery as defined by Ark. Stat. Ann. § 41-2608(1)(a)(iii), making false statements, and intimidating witnesses.

In Judge Lessenberry's hearing the record of which is before us, no evidence showed that the motion was in any way published by the appellant or presented in such a way as to be disruptive of proceedings before the court or in such a way as to incite disruption or disrespect for the court by others. The motion contained no profanity and was phrased in flat, mostly legalistic language. The motion concluded by saying the appellant planned, as soon as reasonably possible, to have attorneys of his choice present the evidence to the prosecutor "in the proper legal manner" so that charges would be brought against Judge Lofton.

Although *Ex Parte Stroud, supra,* discussed the subject of a contempt citation brought about by repetitious motions designed to vex the court or delay proceedings, we have no Arkansas case dealing with the question whether the filing of a motion like the one in this case may be the basis of contempt. In *Freeman* v. *State*, 188 Ark. 1058, 69 S.W.2d 267 (1934), we were confronted with, in another context, the question whether written words consti-

tuted criminal contempt. There, the *Pine Bluff Commercial* could have been interpreted as interfering in a matter before the court. We found it was also susceptible of being a mere criticism of the law being applied. We held the editor and publisher were purged of the contempt by their affidavits disclaiming any intention to interfere with or degrade the court. A published newspaper article is, of course, vastly different from a motion, stated in legal terms, filed with the court.

There is, however, this language in *Freeman* v. *State, supra*:

> In order to preserve the dignity and efficiency of courts, it is essential, among other things, that no conduct be permitted which is either a direct or a consequential contempt—a direct contempt which openly insults the court or infringes on its power committed in the presence of the presiding judges, or consequential, which, without open insult or direct opposition, plainly tends to create an universal disregard of their authority. In the latter class are included any speaking or writing contemptuously of the court or judges acting in their judicial capacity; or by printing false accounts of causes then pending before the court; or printing articles with respect thereto which would be calculated to influence, intimidate, impede, embarrass or obstruct the courts in the due administration of justice. [188 Ark. at 1064; 69 S.W.2d at 269.]

From the perspective of this opinion the most troublesome words are, ". . . any speaking or writing contemptuously of the court or judges acting in their judicial capacity . . ." By using the word "contemptuously," we seemed to be saying that "contempt is contempt." If we meant "any speaking or writing derogatory of the court or judges acting in their judicial capacity," we surely must have meant that such conduct be held to be contempt when the speaking or writing was published in such a manner as to "influence, intimidate, impede, embarrass, or obstruct the courts."

*In Re Larry Little*, 404 U.S. 553 (1972), is a *per curiam* opinion in which the Supreme Court eloquently stated the law of criminal contempt. The case was one in which the petitioner, charged in a North Carolina state court with a crime, appeared and moved for a continuance to a date when his retained counsel

would be available. The motion was denied, and the trial was held. In his summation before the trial judge, the petitioner accused the judge in open court of bias and prejudice, and he said he was being held a "political prisoner." He was held in contempt. Reversing the conviction the Supreme Court said:

> There is no indication, and the State does not argue, that petitioner's statements were uttered in a boisterous tone or in any wise actually disrupted the court proceeding. Therefore, "The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil . . . . [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate." *Craig* v. *Harney*, 331 U.S. 367, 376 (1947). "Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown* v. *United States*, 356 U.S. 148, 153 (1958).

The reversal of this conviction is necessarily required under our holding in *Holt* v. *Virginia*, 381 U.S. 131 (1965). There attorneys filed motions that the trial judge recuse himself and for a change of venue, alleging that the judge was biased. The motion for change of venue alleged that the judge intimidated and harassed the attorneys' client. The court adjudged the attorneys in contempt for filing these motions. We reversed for reasons also applicable here:

> "It is not charged that petitioners here disobeyed any valid court order, talked loudly, acted boisterously, or attempted to prevent the judge or any other officer of the court from carrying on his court duties. Their convictions rest on nothing whatever except allegations made in motions for change of venue and disqualification of Judge Holladay because of alleged bias on his part." *Id.*, at 136. [404 U.S. at 555-556]

In *Holt* v. *Virginia*, the motion which accused the judge of intimidation and harassment was not only filed, but read to the judge in open court. In addition to the language quoted above, Mr. Justice Black noted that a litigant must be allowed to file motions which present claims and raise relevant issues. "[T]he words used in the motions were plain English, in no way offensive in themselves, and wholly appropriate to charge bias . . . of the presiding judge." 381 U.S. at 131.

The only distinguishing factor which might remove the case before us now from the rule of·*Holt* v. *Virginia, supra*, is that Judge Lofton was charged by the appellant with criminal misconduct. All of those charges were, however, relevant to the appellant's contention that Judge Lofton was biased in his case.

The division of our court over this case is indicative of its difficulty and the empathy we feel with a trial judge confronted with the situation the appellant created. Members of this court must, however, sometimes subdue even their strongest feelings in the interest of deciding cases not for the moment but for the long run. The dissenting opinion shows that the appellant was, before he filed the motion at issue here, twice found to be in contempt in the tortured course of the proceedings before Judge Lofton. Those rulings and the facts surrounding them are not, however, what is on appeal now. The dissenting opinion also misconstrues this opinion as holding the motion was "legitimate." We take no position on its "legitimacy;" we say only that it was not contemptuous.

■ The members of the majority for whom this opinion speaks do not take lightly or suffer gladly allegations of criminal misconduct directed at a judge. Chances are this conviction would have been affirmed had there been any disruption or open insult or degrading comment whatsoever accompanying the filing of the motion. On the other hand, we see the criminal contempt power as an awesome weapon in the court's arsenal. Even, and perhaps especially, in cases where the allegations are made by a person the judge has concluded to be mentally unbalanced, the contempt power must not be used to immunize judges from allegations of criminal misconduct which are not presented in a manner constituting a disruption of the court's proceedings or an open affront and imminent peril to the institution or its dignity. It

must never be used to place judges above the law. The vital public respect for and faith in judicial institutions will, we believe, be enhanced by the extent to which we are able to solve our problems with patience as opposed to pique, holding our power in reserve.

Reversed and dismissed.

HICKMAN, DUDLEY, and GLAZE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. This is the second time we have reviewed the criminal contempt of William P. Clark. Before, we found Circuit Judge Floyd Lofton should not have heard the matter because he was too close to the problem. So it was remanded for a different judge to determine the underlying facts.

This time we do not like the underlying facts the judge found. We also do not like the law we cited, so different law and different cases are cited as justification to find Clark not guilty of contempt. In so doing the majority has viewed every consideration in favor of Clark and every inference against the state, casually dismissing or ignoring any facts that were before the court, disregarding all the testimony of the witnesses, including that of Judge Lofton and Clark; and most importantly, the majority does not review two transcripts of the trials which led to this contempt citation. They demonstrate without question that Clark, from the beginning, deliberately and intentionally sought to defy, ignore, frustrate, and completely disrupt the judicial process and malign the trial judge and the circuit court.

The pleading or document filed by Clark is defended by the majority as a legitimate legal motion; two United States Supreme Court decisions are relied upon which hold no criminal contempt could be found when legitimate pleadings are filed. If this case is reviewed, as it should be, and a review is made of what happened, what the facts are, and what the trial court found, the majority's decision can only be kindly characterized as wrong.

First, this so-called motion is styled "DEFENDANT, WILLIAM P. CLARK, IN PROPRIA PERSONA, HEREBY *DEMANDS* JUDGE FLOYD J. LOFTON, RECUSE HIMSELF FROM THIS CASE FOR THE FOLLOWING REASONS, ALL UNCONTESTED FACTS." There follows a litany of criminal charges, 12 in number, against Judge Lofton,

including witness bribery, false material statements, and intimidating a witness. This motion was admittedly not filed to ask Judge Lofton to recuse, it was filed without Clark's counsel's knowledge, and only discovered by Lofton after Clark's trial for terroristic threatening. (He was found guilty.) It was filed by Clark to make criminal charges against Lofton to impugn his and the court's integrity. If Judge Lofton was guilty of such conduct, he should be impeached; if not, Clark should be found guilty of contempt and punished. Lofton had to call Clark's hand—the criminal charges could not be ignored. They were a direct intentional act of contempt of the judge and the court. The state is the other party to this suit, not Lofton or his court.

Clark's testimony about this document reads: ". . . I won't apologize for this. Because I'm not sorry. Judge Lofton finds my motion offensive. And to him it probably is because it questions his integrity. But, as far as I am concerned that's the reason that I filed the motion because he doesn't have any integrity."

When Judge Lessenberry questioned Clark at one point, Clark responded: "Well, you're just like Judge Lofton, you intimidate . . ." He goes on to explain his version of what happened in his two trials:

> But no where in the testimony will you find that I got mad, accused him of not playing with a full deck or anything like that. Or cursed him. I always conducted myself as a gentleman in a court of law. Even though I am not a lawyer. And I feel like that's the way to get justice. You will eventually if you run across a personality conflict with a Judge like Judge Lofton and I have, you will eventually get somebody [to] appeal it. And I have appealed the cases.

Compare this statement by Clark with the one he made at the second hearing on the terroristic threatening charge held on January 3, 1985. It begins with Judge Lofton saying:

> What's the status of other cases?

> Clark [acting pro se]: Oh, I thought I had delivered the appeal to you, Judge. [Referring to his other case.]

> Judge Lofton: You may have. I don't read those. And you can keep it. I don't read it.

Clark: Well, you've got to keep it. You've got to keep a copy according to—You know, you can shitcan it or whatever you want to do.

But I'm getting ahead of myself. This matter evidently began as a divorce case. That personal matter spilled over into criminal court. Two separate criminal charges were involved: Clark's failure to support his children and threatening to kill a lawyer acting on behalf of his children in the divorce case. Lofton first met Clark when Clark appealed his criminal conviction for non-support of his children to circuit court. It began on October 12, 1983, with criminal case No. 83-1986, State versus Clark:

Judge Lofton: And who are you, sir?

Clark: I'm William P. Clark.

Judge Lofton: You are Mr. Clark. What are we doing with some more of these Chancery things?

Mr. Douglass: This is an appeal from Little Rock Municipal Court.

Judge Lofton: Are you an attorney as well?

Clark: No, I am not, your Honor, I'm representing myself pro se. I've done this several times in Municipal Court and in Chancery Court.

Judge Lofton: You know what you're charged with, don't you?

Clark: Yes, I do, your Honor.

\* \* \*

Clark: I am pleading not guilty and request a jury trial.

Judge Lofton: Six man or twelve man?

Clark: Twelve.

\* \* \*

Judge Lofton: Okay. I don't know anything about this thing, Mr. Clark, but just by way—I'll have an omnibus hearing and I'll want to hear what your defense is. Why don't you tell me what your defense is now.

Clark: Your Honor, I intend to prove bribery, perjury and fraud against Lee Munson, Judith Rogers, two attorneys, Winton McGinnis and Robert Newcomb. I have been deprived of all my assets. I have been harassed continually for almost three years now. I have been illegally incarcerated in the County Jail twice and in the State Mental Institution once.

Judge Lofton: What was the deal out at the State Hospital?

Clark: Well, Lee said that—What happened, my children have run away from home seventeen times during this period of time. They are now ten and six.

Judge Lofton: But what did the State Hospital say when you were out there?

Clark: . . . so, when I de-committed myself from the State Hospital having proven that there was nothing mentally wrong with me, Lee was mad and that's the problem. He was mad because I told him I intended to appeal and file charges.

* * *

Clark: If I had not been deprived of everything that I had earned over the past twenty years, your Honor, I could afford an attorney.

Judge Lofton: Well, I will appoint you one if you can't afford one. You're entitled to one because, if you're guilty of this, you may go to jail.

Clark: Well, your Honor, I understand that I may go to jail.

Judge Lofton: I will appoint you one and it won't cost you a dime.

Clark: I can appreciate that, your Honor, but I—Well, you may appoint one but I may or may not use him.

Judge Lofton: Do you want one? You're going to need one. If you don't want one, it doesn't make any difference to me. . . . If you want one, you let me know. . . . Now, I'm going to put down here that you're going to represent

yourself and you're on notice of all the difficulties you've got. But one is available and I'll appoint him and it won't cost you a dime. You let me know.

Clark: You can go ahead and appoint him.

Judge Lofton: . . . Bill [a lawyer], Mr. Clark wants to represent himself and I'm going to let him do that as far as he can. You heard some of what he wants. He's got an uphill battle. Just make yourself available to him.

Clark: Thank you, your honor.

On November 22, 1983, the second hearing was held before Judge Lofton. Deputy Public Defender Tom O'Hearn filed a motion to be relieved as Clark's counsel:

Judge Lofton: So, you want to proceed on your own?

Clark: I would like to, your Honor.

Judge Lofton: Well, you're foolish but let me tell you something. I'm going to let you do it but it's going to be almost impossible for me to appear to be fair because every time you get up and open your mouth he's going to object. And every time it's going to be proper and I'm going to have to sustain it because you don't know how to ask questions and because you'll ask them improperly and because in asking questions you will have a tendency to testify and, in so doing, you will open up things that he can't talk about unless you open them up and you will open them up. So, while it's extremely foolish—. . . . I will let you do this but I want to warn you you are extremely foolish. It doesn't make any difference to me. I don't care whether you get a year or a Thousand Dollars or get acquitted. It doesn't make any difference to me. The only thing I'm concerned about is it is extremely difficult for me to appear fair.

Clark: I understand what you're saying, your Honor. . . . Before we go any further, the reason that I would like to represent myself, quite frankly, is that I intend to call approximately twenty-eight witnesses to prove that the entire divorce decree and the child support that results

from it is a direct result of bribery, perjury, fraud, filing of false legal documents by attorneys, which they have already admitted in Court that they have done this.

Clark asked Judge Lofton to recuse because he would not let Clark present his case the way he wanted.

Judge Lofton: That will be denied because I'm going to follow the law and there's not a judge in the State that's going to follow the law that would do any different than I do.

Judge Lofton inquired why the case was not in chancery court. Clark had been convicted in municipal court by Judge Dishongh of non-support offering no defense. When asked what his defense would be, he responded:

Clark: That the entire divorce decree and the child support that went with it is in fact a fraud.

Judge Lofton: Did you appeal that down there?

Clark: Your Honor, I have attempted to appeal on numerous occasions. However, I was for the longest period of time, almost three years, unable to get a divorce decree.

Judge Lofton: Why? * * *

Clark: You know, I—He [Judge Munson] was supposed to state the findings and facts—findings of fact and conclusions of law as to what grounds for divorce, what were the grounds for divorce, which did not exist. And he has admitted out of Court—And I can prove it, that he stated after the hearing was over that there were no grounds for divorce. * * *

Judge Lofton: Well, why didn't you appeal it when filed it? [sic] He's granted a divorce now.

Clark: Your Honor—Yes, he granted a divorce technically.

* * *

Clark: It is under appeal, your Honor. The entire matter is under appeal and I intend to see that Lee Munson goes to the Federal Pen if I can, if it takes me until I'm ninety-five

years old. * * *

Judge Lofton: It's so foolish, you know. If you would just take your lawyer, he could have corrected all of that. If what you say is true, he could have corrected it in ninety days.

Clark: Your Honor, I assure we attempted to correct it. Thus far, I have been illegally incarcerated in the State Mental Institution.

Judge Lofton: Well, I've got questions about the illegality of that.

Clark: Well, I assure you there was no hearing on it. Everybody admits.

Judge Lofton: You know, you're not showing very good judgment today. Now, I'm not saying you're crazy but the fact that you don't take that lawyer shows that you're not playing with a full deck.

Clark: Well, your Honor, in that case I'd like for you to recuse yourself.

Judge Lofton: Why? Why?

Clark: Because of the statement you just made.

Judge Lofton: I'm not going to find you guilty of being crazy or not crazy. I'm just saying that because you don't accept a lawyer that's appointed for you you're not playing with a full deck.

Clark: Well, your Honor, thus far, I've done reasonably well representing myself . . .

* * *

The third hearing was held December 16, 1983, an omnibus hearing before the trial.

Clark: I assure you, your Honor, that I'm not trying to be a problem child. I'm trying to get some relief for my children and myself.

State's attorney: That's the problem—

Judge Lofton: I can't buy that, Bill, I cannot buy that because you're going at it in an entirely improper way.

Clark: I have no alternative.

Judge Lofton: And you have refused all the help that this Court has offered you to do that. So, I don't buy that. But that's all right. If you want to be a problem child, you know, it doesn't bother me. I get paid the same whether it's a problem child or not. So, it doesn't bother me. I just don't believe you.

Clark: I understand.

Judge Lofton explained exactly what Clark was to do for the next hearing on February 9, 1984.

Judge Lofton: Now, if you've got a problem with it and you want a subpoena duces tecum, which is a subpoena for records or something like that, then you must type that and present it in form and present it to me for my approval. And I will discuss what you want and why you want it and so on and so forth. I may or may not do it. I may ask you to put in form and show me some law of why you want it before I rule on it. But on the 9th of February that is your day and you may present to me at that time any and all information and/or witnesses and you may have them here at 9:30 and we will have a reporter and you may call them as witnesses and you may ask them whatever you want to ask them at trial. And, if there are no objections, then fine. We'll go right along. If there are objections, I'll rule on them and we'll get that out of the way. Now, if you want a copy of the transcript down there, as far as I know, you can pay for it and get it. If you can't pay for it and can't afford to pay for it, that's another matter I'll have to discuss with you and you will have to file the appropriate document showing that you're an indigent and affidavits and such and so on and so forth and get a subpoena duces tecum for the production of that as an indigent and show me some law that what is in there is relevant and material to this proceeding. And, if you can do it, fine. If you can't, sorry about that.

Clark: I understand.

* * *

Judge Lofton: If I order that transcript down there and they can't get it out, then I'll have to pass this case to get it done. But I want it, you know, started immediately because if there's any way, shape, form or fashion this can be done on the 9th of February, I intend to do it.

At the fourth hearing on February 7, 1984, the following colloquy occurred:

Judge Lofton: What are we here for?

Clark: Your Honor, I'm here. I received a letter from the Court to appear. * * *

Court Reporter: You were advised by the Clerk or somebody that he had issued subpoenas only for Friday and not for the omnibus hearing Thursday. * * *

State's attorney: If the Court will recall, Mr. Clark is representing himself pro se. At a previous omnibus hearing, when you inquired as to the nature of his defense, he indicated that he was going to attempt to collaterally attack the validity of the divorce decree and child custody order. We had some discussion on that, that was probably inadmissible material.

The Court instructed Mr. Clark and set on the docket and set out a notice that we were to have a proffer date of February the 9th at 1:30 for him, since he was representing himself pro se, to subpoena these witnesses to proffer their testimony so that the Court could determine both the relevancy and the materiality of their testimony.

I've been monitoring the Circuit Court's file. He has issued in excess of twenty subpoenas, all of them for the tenth, none of them for the ninth. He's in a position now that any subpoenas issued for the ninth are not valid because of the three day rule. So, he cannot get his witnesses here to proffer them.

He also has violated 43-2002, that to exceed six witnesses on a misdemeanor case, he shall first make a—file a verified application to the Court. This application shall

contain a statement of the facts which the party expects to prove by each of the witnesses. And it has to be a fact that could not already have been proved by one of the witnesses within the first six.

The Court then has to grant him the authority to issue the other subpoenas. He's not done that.

He also has issued subpoenas for his minor children. Those subpoenas have not been properly served. They've been served on an adult who is not a guardian of the children. Mr. Robert Newcomb is here. He is attorney for the children and represents them as— * * *

Judge Lofton: Okay. You understood that I ordered you to have them subpoenaed for the ninth for a pre-trial hearing, a pre-trial trial.

Clark: Well, your Honor, it is my—

Judge Lofton: Did you understand that?

Clark: It is my intention not to present the evidence at an omnibus hearing. I believe I have the right to either present or not present certain defenses. Am I correct?

Judge Lofton: No. That's not so. So, you are violating the Court's order. * * * And I told you expressly to get them here. You are telling me now that you have elected not to do that. And that's fine. You may do that. But you shouldn't have.

Clark was found in contempt and the court observed:

Mr. Clark, I have been trying to get you to accept an attorney and I have been trying to do everything that is humanly possible for you in this case since I got it. You have ignored it. You have rejected it. You have refused it. You have been obstinate. You have been arrogant. You have been impudent. And you have done nothing but to try to obstruct the trial of this case.

Notwithstanding that fact, I am still bound and I am going to do everything that I can to help you. And you can refuse it. You can ignore it. You can do whatever you want to but I am going to try this case. And I am going to do everything

humanly possible to protect your rights and see to it that you have your day in Court.

Then, when I've done that, whatever the pronouncement is, I have done all I can do.

And, if you don't want to abide by the rules of this Court, if you don't want to accept the offer of help and assistance of this Court, that's your problem. That's your privilege. You have that right. But you're going to be in jail while you're exercising that right.

Now, Mr. Simpson, I am going to appoint you to represent this man. He does not want you. And that's fine.

And what I want you to do, I want you to do this: I want you and the Prosecutor to see if you all can get in touch with these people by phone and that if there is any way humanly possible that we can get them here for Thursday. And it will be by their grace because we obviously can't order them here in this short notice.

If they can, I want them to consider this: This Court has set aside this time to try this case. And, if there's any way humanly possible, I intend to try this case Thursday and Friday and get rid of it.

And, if they will accommodate me, I will accommodate them. Otherwise, it's going to be more time that they're going to waste on down the road because we're going to have to pass it off and keep him in jail and resubpoena and reset the trial and he's going to be in jail out there sixty or ninety days because it's going to be that long before I can put it back on the docket. And I'm prepared to keep him there but I don't want to. I want to get rid of this case.

Clark's appointed attorney: Judge, we have been previously appointed on this case and I had assigned it to Mr. O'Hearn of our office. He's done quite a bit of work on the case. I think he's talked with Mr. Clark. And what I would like to do, with the Court's permission, is let Mr. O'Hearn handle this case. * * * Judge, one more point we have. When we first—Now he's offered his witness list. I think he had subpoenaed some U.S. Senators. I'm not sure all.

But—

Clark: Beg your pardon.

State's attorney: There's some Chancellors.

Clark's appointed attorney: There's some Chancellors. I'm not sure who all was subpoenaed. There's list of about forty, I think.

Judge Lofton: Gentlemen, I'm reading the Brethern and you can subpoena the President. I didn't know that.

Clark's appointed attorney: At that time, we didn't understand why some of these people were being subpoenaed.

Judge Lofton: Well, nobody does, you see. And all I want you to do is just try to find out, you know. And he may not tell you. He may tell you. Are you going to talk to this lawyer?

Clark: Your Honor, I'll just have to determine that at a later time.

Judge Lofton: Well, it's getting pretty late, you know.

Clark: Well, I understand.

Judge Lofton: We're getting ready to go to trial Mr. Clark, and it's time you started making some basic, fundamental decisions. But you don't have to, you know. All you have to do is be here and we can try the case. * * *

The fifth hearing began on February 9, 1984.

Mr. Clark: Your Honor, may I make a statement, please?

Judge Lofton: I suppose so.

Clark: Your Honor, I do not wish to have anyone defend me except myself. I refuse the assistance of the Public Defender.

Judge Lofton: I understand that, Mr. Clark, and respect that. And I'm just going to have them stand by and available to you and to be aware of the issues in the case and the legalities in case you need them and in case the Court needs them. You're your lawyer and they're just

available to help you and to help me get through this.

Clark: I understand. Very good. * * *

State's attorney: I think at this time it would be appropriate for the Court to hear testimony about Mr. Clark. I have some questions as to whether he is fit to proceed at this point or not or whether he can effectively assist in his own defense. The actions he's taken indicate that he is either not in grasp with reality or refuses to accept that.

Clark: Your Honor, I object strenuously. Before any testimony is given as to whether or not I am fit to represent myself, I'm sure that I'm due psychological testing and to bring in witnesses on my behalf to state that I am in fact competent and capable enough to handle this defense myself. * * * I would like to have the record presented from the State Hospital, which in fact I did subpoena.

Judge Lofton: We'll get it. Is it here today?

Clark: It will be here tomorrow, your Honor, and it will state beyond a question of a doubt that I have three separate physicians who state there's absolutely nothing wrong with me. * * * Let me say that, number one, I have paid a portion of the child support for which I am now being charged that I have not paid, that I paid during that time—

After lengthy arguments and testimony, the following occurred:

State's attorney, continuing: Mr. Clark, let me ask you just one very simple question. Why is it that you will not go out and hire an attorney to assist you in this case? I understand you got that right. Just one little simple question. Why will you not go out and hire an attorney?

Clark: I don't have any money right now.

Judge Lofton: He doesn't have any money. Is that what he said?

State's attorney: That's what he said.

Clark: I don't have the money right now.

Judge Lofton: Would you accept one if one were provided?

Clark: No, I would not, your Honor.

Judge Lofton: So, the money doesn't have anything to do with it.

Clark: Well, in this case, if I had an opportunity to hire an attorney that I had confidence in, yes, I probably would hire him.

Judge Lofton: Do you have any attorney in mind that you have confidence in?

Clark: I have one.

Judge Lofton: Who? * * *

Clark: Is it mandatory that I answer that question?

Judge Lofton: No, I'd just like to know.

Clark: Well, I would prefer not to answer at this time.

* * *

Judge Lofton: I might get him for you, at a fee that you could afford. If you will just tell me who it is, I'll see if I can accommodate you.

Clark: Harold Craig.

Judge Lofton: Harold Craig. John, Call Harold Craig. And somebody look in the courthouse and see if Harold Craig's here and ask him to come up here. * * * Mr. Clark, one thing I'd like to ask. Mr. King testified you told him that the conspiracy had widened to include this Court and him. Do you think this Court's involved in any conspiracy against you?

Clark: Your Honor, I don't recall ever having said that to Mr. King.

Judge Lofton: So, you deny it?

Clark: Yes, I deny that. * * * Your Honor, it is my opinion that you are doing it the way you usually do it. It is your Court and you have a right to run it the way you see fit.

Judge Lofton: Gee whiz. There's some dispute about that. But go ahead.

\* \* \*

Clark: I really don't think I will be convicted. It depends on what evidence you will allow me to present.

Judge Lofton: Therein lies the problem, Mr. Clark.

Clark: I realize that you are going to do what you think is right.

Judge Lofton: That's charitable of you.

\* \* \*

Judge Lee Munson testified:

Judge Lofton: Judge, was he able to adequately deal with the intricacies of his legal issues?

Judge Munson: Not really. He didn't understand the consequences. He didn't like the law and he was going to do it his way.

Cross-examination by Clark:

Q. You stated, Judge Munson, that I made bizarre statements in Court. Can you tell me what bizarre statements those were?

A. Well, you said that Judge Rogers had taken bribes, that I was on the take, that we were all conspiring against you, that sort of thing.

Q. I see.

A. There was no base of foundation for that. That's a bizarre statement to me without foundation.

\* \* \*

Mr. Harold Craig, a lawyer, was found:

Judge Lofton: . . . Mr. Clark, I have found Mr. Craig here. He was in the courthouse.

Mr. Craig, Mr. Clark does not have an attorney and will not accept the Public Defender or anyone that the Court might appoint to him. There are some allegations about a wide conspiracy. And there is only one lawyer in all of

Pulaski County that he would even consider. * * * I can't pay you but I am deeply concerned about Mr. Clark. And I'm not concerned about the legal issues. I'm concerned about his welfare.

As an officer of this Court, would you talk to Mr. Clark?

Craig: Yes, I would.

Judge Lofton: Notwithstanding the fact that I can't pay you.

Craig: I understand that.

Judge Lofton: And you're under no obligation to me or anybody but Mr. Clark. Also, Mr. Craig, the Prosecutor has asked Dr. Rosendale to be here today and he has witnessed this and I would like to make Dr. Rosendale available to you.

Craig: Very well.

Judge Lofton: And I would like to give you and Mr. Clark and Dr. Rosendale some time to talk. And will you report back to this Court?

Craig: Certainly.

Judge Lofton: Do you have any objections to that, Mr. Clark?

Clark: No, I don't, your honor.

Judge Lofton: Clark, would you take them back and put them in the jury room or wherever back there. Dr. Rosendale, do you mind?

Rosendale: No, sir.

Judge Lofton: Thank you. I appreciate it. I'll wait until I hear from you all.

(Thereupon, the Court continued with its docket; then the following proceedings occurred:)

Dr. Rosendale: I've told him what I've recommended. I've told him that he absolutely needs counsel. And I've told him that if he tries to represent himself and he brings in all

this non-material and his allegations that he's made in the past I think he's just going to hurt himself, that only the instant case, just the non-support, this is the only issue before the Court, as I understand. And Mr. Craig agreed with me. So, if he will accept counsel, he can handle himself.

Judge Lofton: Okay. Does that mean inpatient counseling?

Dr. Rosendale: No. I mean if he will accept counsel in the courtroom.

Judge Lofton: Okay. But, otherwise, he can't?

Dr. Rosendale: He cannot handle himself as his own attorney.

Judge Lofton: Thank you, sir. I appreciate that.

Dr. Rosendale: That's my recommendation to the defendant as well as to the defense lawyer.

Judge Lofton: . . . Mr. Craig, have you had a chance to visit with Mr. Clark?

Craig: Yes, I have, your Honor. . . . It's my opinion, your Honor, that Mr. Clark will need to be represented by counsel. As I've explained to him, he has a right to appear and represent himself. . . . If he's competent to do so. My opinion is that he would do himself and his case much more damage without representation by an attorney. I have not discussed with him in any detail the facts of the case. I'm not familiar with it at all. From my visit with him, yes, I think he needs to be represented.

Judge Lofton: Mr. Clark, what's your position on Mr. Craig's position?

Clark: If he will represent me, your Honor, I will take him as counsel.

Judge Lofton: Mr. Craig, can you accept it?

Craig: I can, your Honor. The only thing I'd like publicly for Mr. Clark to be aware that your Honor and I practiced together for a short few weeks many years ago. We were

not partners. We were in the same building.

Judge Lofton: That's true. And I've never held that against you.

Craig: But I hate for Mr. Clark to think there was any collusion.

Judge Lofton: Well, he said I'm not colluding. And I think I've demonstrated that I'm trying to help this man.

Craig: But I would be happy to represent him.

Judge Lofton: Is that satisfactory to you, Mr. Clark?

Clark: Very satisfactory.

Judge Lofton: Now, we're set for trial tomorrow.

The court recessed and reconvened at 2 p.m.

Judge Lofton: What does your man want to do?

Craig: Dismiss his appeal. . . Remand it to lower court, get out of jail, go to work and pay us a lot of money.

Judge Lofton: This is the State of Arkansas versus Bill Clark, 83-1986, and the charge is non-support. And this is a misdemeanor appeal from Little Rock Municipal Court, where you were found guilty of non-support and fined Nine Hundred Dollars plus Fifty Dollars and Twenty-five Cents costs. And you appealed that. And you've been up here in this Court for some time. In fact, it was filed up here on September the 14th. Then on October the 12th we arraigned you and we've been fooling around, I don't mean to be short cutting it or facetious. We have been dealing with your problem since then. We're set for a jury trial tomorrow. So, we had a hearing this morning about it and, without going into all that—that record is there—you indicated that you might consider talking to Mr. Craig about representing you and the Court got Mr. Craig. He was in the courthouse and he came up and talked to you, spent some time talking with you today. And we also had Dr. Rosendale here talking to you today. And you've had some time to consult with Mr. Craig and various things.

Mr. Craig advises me that you have reached an agreement

that's in your best interest with Mr. Craig, your attorney, and that is that you want to dismiss this appeal and remand it back to the lower court and go on about your business.

Clark: That is true.

Judge Lofton: Now, you understand what that means?

Clark: I think I do.

Judge Lofton: He's explained it to you. Mr. Craig and Mr. Adametz both have explained it to you.

Clark: Well, I understand from him enough that if I misunderstood anything that's my problem, not theirs.

Judge Lofton: Okay. So, you're just not going to litigate this here. I'm going to send it back down there and, whatever that is, that's fine. You understand that and this case is dismissed.

Clark: I understand that.

Judge Lofton: And that's what you want to do? * * * And all I'm going to do is I'm going to dismiss your appeal on your motion and I'm going to remand it back to them and you can argue with them and fuss with them and do whatever you want to do down there and solve it and settle it. You know, whatever. But I'm through with it and that's on your motion. You understand that?

Clark: I understand that.

Judge Lofton: And you are satisfied with Mr. Craig?

Clark: Yes.

Judge Lofton: You think he's done you a good job today?

Clark: Yes, I do.

After Clark agreed to dismiss the appeal on advice of counsel, he reappeared in Lofton's court. This is March 6, the sixth hearing.

Judge Lofton: All right, Mr. Clark, this is your petition to reinstate your appeal. Right?

Clark: That's correct your Honor.

\* \* \*

Judge Lofton: Mr. Clark, number one, that will be denied because I've tried for six weeks, two months, now, to get you to have a lawyer. And I have not taken it upon my responsibility to advise you about anything except that you need a lawyer.

Clark presented a notice of demand for rights sua sponte.

Judge Lofton: \* \* \* I've done everything that I know to do within the rules of law, procedures and regulations to protect your rights and you've avoided them, you've ignored them, you've refused them. And, now, then we have an understanding or had an understanding, Mr. Clark, that you were going to represent yourself, no holds barred and let the chips fall where they may. That's what you did and I gave you a lawyer and you didn't like him. So, those will be denied. You are the attorney of record unless you accept counsel appointed by the Court.

Clark: All right. I would prefer to be the attorney of record.

\* \* \*

Craig was called by Clark:

Q. But you really and fully believe that I did of my own knowledge and volition dismiss my appeal that day?

A. Sure.

King was called by Clark:

Q. Was it your intent, Mr. King, on that day to get me to accept counsel? [Harold Craig.]

Judge Lofton: That doesn't have anything to do with it. He didn't have anything to do with it. He didn't interject himself into it. You were the one that said that you would accept Harold Craig and I was the one that sent and got him. Lloyd King didn't enter into it at all, I don't think. If I asked him, I didn't intend to.

A. Do I understand you're waiving the attorney/client

privilege?

Q. Yea.

\* \* \*

Craig again testifying:

Mr. Clark, you expressed to me, first of all, that you had testified that you had sufficient income to pay your child support. You acknowledged the child support had come due. You acknowledged that you had not paid it. You continually and repeatedly asserted your desire to nail all these people who you are convinced have conspired against you. And that was your purpose in demanding a jury trial, to try all these other people for conspiracy. And, yes, I told you that the evidence you intended to offer was not material and was not relevant. I was trying to keep you from making a complete and utter fool of yourself.

Clark continuing:

Q. I see, Well. . . I mean you and I were talking. Were you watching anything else that transpired in the room?

A. I don't recall whether I was or not.

Q. Then, if a highly sensitive tape recorder was placed in that room and in fact that conversation was taped, you wouldn't know it one way or another, would you?

A. I certainly wouldn't.

Q. Okay. Now—

Judge Lofton: Was there one? \* \* \*

Clark: With all due respect, your Honor, I don't know that I have—Excuse me. Before I say something and go back to jail, may I think about that question a moment? Under sua sponte—

Judge Lofton: Sua sponte is not going to go with you. \* \* \*

Well, I'm asking you, though. Was one put in there?

Clark: And I'm saying I'm not going to say.

Judge Lofton: Okay.

Clark: Your Honor, the Defendant would like to state at this time, with all due respect to the Court, that it's Defendant's opinion that the denial of the Court to allow the Defendant to prove his points of conspiracy that are in fact pertinent to this case. And I would like to at this point state that I would like to enter into the record as a matter of record the definition of conspiracy and conspire out of Black's Law Dictionary as a matter of record.

* * *

I would like to state that it is the opinion of this Defendant, certainly not maliciously to state to this Court or with intent of contempt of this Court, but that this Court and Deputy Prosecutor Lloyd King, Deputy Prosecutor Richard Callaway, two Public Defenders, Thomas Hearn (sic) and William R. "Bill" Simpson, have conspired—Have conspired to deprive this Defendant of due process, to deprive this Defendant of a jury trial, to intimidate and to coerce this Defendant, continuously that they have called illegal hearings and unlawful hearings, namely on February the 9th, when Defendant was supposed to come in supposedly for an omnibus hearing he finds himself two days after the two Public Defenders attempted to intimidate the Defendant in the jail cell into stating that this Court could in fact find Defendant insane. * * * If I'm not mistaken, this Judge did, too, in Chambers.

Judge Lofton: No. I just said you weren't playing with a full deck.

Clark: That is correct. I believe that was the statement. I believe the Defendant asked the Court to recuse himself at that time and the Court refused to do so.

Judge Lofton: Yeah. And I said I wasn't trying you for not playing a full deck. I was just trying you for not paying child support.

Finally, after six hearings, the appeal was dismissed.

Next, we examine what happened in the case of terroristic threatening which was ultimately tried to a jury which found Clark guilty. On the 19th of February, 1985, Clark's trial began

for charges of terroristic threatening to kill Robert Newcomb, the attorney ad litem appointed for his children and his former wife's attorney. The first hearing was held on August 31.

Judge Lofton: Good morning, Mr. Clark. I didn't know who that was when I saw the name. You're charged with one count of terroristic threatening. Are you going to represent yourself in this case.

Clark: Yes, I am, your Honor.

Judge Lofton: You know what you're charged with, don't you?

Clark: Yes, I do.

Judge Lofton: Jury trial?

Clark: Yes. Twelve.

On January 3, 1985, the second hearing.

Judge Lofton: Mr. Clark. What's the status of your other case?

Clark: Oh, I thought I had delivered the appeal to you, Judge. [Appeal from Municipal Court]

Judge Lofton: You may have. I don't read those. And you can keep it. I don't read it.

Clark: Well, you've got to keep it. You've got to keep a copy according to—You know, you can shitcan it or whatever you want to do.

Judge Lofton: What's the status? Has it been submitted yet? * * * Have you filed any motions?

Clark: I filed one just a few minutes ago. It will be the second time I've asked you to recuse yourself.

Judge Lofton: Well, it's not timely filed and I'm not going to do it. * * * Why? For what—Just because I said you weren't playing with a full deck?

Clark: Well, you're biased. There's no question about it. I think I know it and you know it and everybody else in the courthouse knows it.

Judge Lofton: So, your reason you want me to recuse is because I'm biased?

Clark: Because you're prejudiced and biased against this defendant.

January 30, the trial date.

Judge Lofton: Mr. Clark, is there anybody going to be with you at the counsel table?

Clark: No, your Honor.

Judge Lofton: Okay. I have an attorney available. Will you accept appointment of a public defender to help you?

Clark: I will not.

Judge Lofton: Okay. Mr. Allen, I'd ask you to sit at the rail, at that bench right behind the counsel table and just make yourself available. This is Mr. Art Allen. He's available if you need to ask him anything. He won't sit there with you but, if you need to know something, he's available. Okay. Now, then, is there anything I need to know about this case before we get started?

State's attorney: I just hate to see him having a field day at everybody's expense with him not having to pay anything for it.

Judge Lofton: Well, I don't know—

Clark: I have to pay for you.

Judge Lofton: Now, listen. Mr. Clark, we're not going to put up with that now. I'm going to do everything I can to keep you from prejudicing your case today. I probably will have my hands full. But I'm not going to have a bunch of arguing, fussing, fighting out there. This is a court of law. If the State can prove you guilty and convict you, fine. If they can't, they're not going to. But you're going to be held to the same standards, as you know, as any other lawyer. I'm not going to put up with all that bickering because it's not going to help your case and I'm going to do everything I can to help you.

Clark: I understand.

Judge Lofton: But, now, I'm going to rule just like I would and I expect you to obey those rules. And we're going to go right through this trial just like you had a real lawyer.

After considerable testimony, with the judge admonishing Clark not to bring up irrelevant material, the judge stated:

There's a lawyer over there. He might be able to help you.

Clark: This defendant is not foolish to believe that this Court is interested in protecting this defendant's rights at all.

When Clark persisted in arguing with the court's admonitions and rulings, the judge firmly said:

Be quiet a minute. You be quiet. You go over and talk to that man. He's going to give you some legal advice. [The attorney appointed for Clark] Art, I am going to hold him in contempt of Court and put him in jail until he agrees to abide by the rulings of the Court or, if he will agree to conduct this trial in a manner that is in his best interests, I will continue to do so but I'm not going to put up with anymore. Now, you go talk to Mr. Allen over there and let him give you some legal advice and then you all tell me what you want to do. Talk to him.

Clark: Your Honor—

Judge Lofton: Are you refusing to talk to Mr. Allen?

Clark: Your Honor, I have a right to defend myself. The Supreme Court has stated that I have a right to defend myself.

The judge dismissed the jury and noted:

Mr. Allen, you are hereby appointed to stand by as lawyer for Mr. Clark. He is going to be committed to the Pulaski County Jail until such time as he agrees to abide by the rulings of the Court and/or let you try the case in his best interest, whichever. Take him to jail. He's to be held in contempt of Court until he purges himself by complying with the Court's orders.

On the 4th of February, the court reconvened. This time

attorney Jim Tripcony appeared for Clark.

> Judge Lofton: Mr. Clark, you've refused steadfastly to get a lawyer but have you hired Mr. Tripcony?
>
> Clark: I have, your Honor.
>
> Judge Lofton: And you're satisfied with him?
>
> Clark: I am.
>
> Judge Lofton: And you want him to represent you?
>
> Clark: I do.
>
> Judge Lofton: And you're going to follow his advice?
>
> Clark: To the best of my ability.

The judge, concerned about the way the case was going, called Douglas Stevens.

> Judge Lofton: . . . Now, I'm concerned about—The State's trying to put him in the penitentiary for up to six years. And I'm concerned about he will not or up to this point has not agreed to employ counsel, he does not or is not. He'll change his mind about that before it's over with. But I'm concerned about your position on whether he can represent himself and, two, about the safety of myself, the court personnel. I'm not worried about Robert Newcomb because the case will take care of that. But Mr. Clark and I have had several run-ins and we're going to continue to have run-ins because I'm going to run this court the way I want it to run and he's not going to change that. And he knows that. So, talk to me.
>
> Dr. Stevens: Okay. I would agree and I have agreed for a long time that Mr. Clark is not in a position to represent himself because he's too emotionally involved and anyone in that situation it's impossible. Furthermore, he's a much more task oriented individual and stubborn as he and I have talked about. He's the sort of fellow that if he came along the road and there was a boulder that had fallen in the middle of the road and he could get around it he wouldn't. He'd stop, get out a sledge hammer and break up the rock rather than attempt to go around it. And this

characteristic is fine in many situations. In business it stands him in good stead. In the court it doesn't do him any good at all. He's needed counsel and he and I have talked about that and finally he agreed to do so. And I do think that he will continue to let Mr. Tripcony represent him at this point. I think he sees that he can go no further in the direction that he's been going without causing himself increasing levels of grief.

\* \* \*

Judge Lofton to Clark: Well, now what are you willing to do if I give you a new jury? No question about it. You tainted that one so bad that, you know, they're so mad at you and you got so much stuff in there. But, anyway, it wouldn't be to your advantage. But, you know, you haven't followed my advice yet. What are you willing to do if I give you a new jury? Are you willing to spend some more time in jail for contempt? That cost Six Hundred bucks that you insisted upon.

Clark: Well, your Honor, I'd have to confer with my counsel.

Judge Lofton: Well, that's what you've got him for. Now, I want to solve your problems today. And I'm just getting started with the requirements. Let me put another little piece in the pie, Jim. He has subpoenaed people from all over the country, his ex-in-laws, and they have got plans. They were here and they've gone to California. Now, if he wants them back—I'm not going to put this case off. I can try it Friday, the fifteenth. If you can get ready by Friday the fifteenth and if he can get all his witnesses back here—He's going to have to re-subpoena them, Judge Rogers. I don't know what in the world Judge Rogers would testify to. You know, I just don't know.

A mistrial was granted on the motion of the defendant. A third hearing began in this case February 12, 1985.

The pretrial hearing occurred February 15, 1985, and the new trial began that day and continued without incident. The jury found Clark guilty and sentenced him to a $10,000 fine. That

brings us to the beginning of the case before us, when it was discovered the document in question was filed without being brought to the attention of the court.

The contempt proceeding in regard to the motion consists of 268 pages. Mr. Tripcony was there as counsel. Mr. Clark was not present. At the first hearing on February 19, the following occurred:

> Tripcony: Thank you. Although I have stated to the Court that tomorrow would be ten days notice to me, my client informs me that would not be ten days notice to him and I think . . .

> Judge Lofton: Does he know of any way he would be prejudiced by going ahead tomorrow? Is there anything he can do in that other three or four days that he hasn't done already? Incidentally, while we're talking Mr. Tripcony, did you not advise Mr. Clark that he was supposed to be here that Tuesday morning after the trial?

> Tripcony: That's correct.

> Judge Lofton: And he didn't show up, did he?

> Tripcony: That's correct, your Honor.

> Judge Lofton: He knew that there was an order for him to appear?

> Tripcony: Yes, your Honor. . . . And my understanding was—I stand to be rebutted. My understanding was that it was Mr. Harrill's desire to represent Mr. Clark and Mr. Clark's desire to have Mr. Harrill represent him rather than have me represent him for the fee I quoted for appeal.

> Harrill: Your Honor, I've never been fired. I was forced to withdraw from the domestic matter because Mr. Clark could not pay the fees that had amounted up at that time.

> Judge Lofton: Your motion to be relieved will be denied. And you may both represent Mr. Clark and anybody else he wants to marshal. You know, the more the merrier. We're going to finally wind up with one lawyer, I hope. It may be you, Jim, but we're not going to fire and hire day in and day out.

The second hearing on the contempt was held March 1, 1985. During the hearing Lofton said he was "thick skulled." During Clark's testimony the judge remarked:

> Well, Mr. Clark, you and I have had a long continuing dispute about what was relevant and material in your cases and you've never been in agreement with me. And it's my job to decide what is relevant and material and you've never agreed to that. So, the only thing I've ever told you was that you needed a lawyer. And everybody that's ever represented you has said you needed one but you won't listen to them. So, the only dispute we've had about that is you want to relitigate your custody and divorce and it's not relevant to most of the issues up here. So, that's the only dispute we've had. But I've never made you lie about it, I don't think. * * * I will certainly admit that his mental welfare has been a great concern to me, ever since he's been up here. And I have on every opportunity had competent psychiatric and psychological people, even his, tell me that he was sane and he didn't need to be committed. And I've never committed him. And, as recently as yesterday, his two psychologists told me that he was competent. Everything I've done I think the record will show that I had certain questions about him. But everything I've done has shown that he is competent.

In conclusion the judge found:

> Mr. Clark, the Court is going to find you in contempt of Court, criminal contempt of Court. The evidence that you have presented today is that you accused this Court of bribery, you accused this Court of intimidation of witnesses and you have accused the Court of false statements. Not only have you not produced any evidence of that, but in cross-examination you admit that it wasn't even in this case that is before me that you filed this pleading in but it was in another case that this Court had, but that you filed it in this one because it was the only one available. And, Mr. Clark, I frankly wish that I could be fortunate enough and lucky enough to not draw any more of your litigation. But you have intimidated Judge Munson. You have intimidated Judge Judith Rogers. You have run all of the

Chancellors off and it became necessary to get a judge from out of Pulaski County to try your domestic relations case, Judge Rogers from Stuttgart. And, now, you've filed similar allegations about him being in a conspiracy. And you've told me yourself that Judge Judith Rogers and Judge Munson were in a conspiracy to you—with you. You accused me of the same thing. You've accused me of these things, bribery, but not in this case but in another case that's on appeal before the Court of Appeals that you've raised that, supposedly, you say. * * * And I will state for the record that if you are not paranoid you are without a doubt the most stubborn man I have ever seen in my life. But I'm not going to punish you for that. I'm not going to punish you for being stubborn.

That judgment was reversed in *Clark* v. *State, supra,* which brings us to the fifth volume of this record. The hearing on this matter was conducted by Judge Lessenberry. The record consists of 208 pages. Judge Lofton and Clark testified extensively. Clark was questioned by his counsel Harrill on every allegation in the document. All the records I have mentioned were before the court. Some of the testimony is relevant:

Judge Lofton: Yes, it took up additional time on the docket to hear it. The contempt.

Harrill: What I am talking about it did not interfere with your orderly handling of your other cases?

Judge Lofton: Yes, I think so. * * * Yes, is that definitive of anything, Mr. Harrill? Yes, my cases got tried. But extra hours, extra work, extra time. Yes.

Harrill: In terms of dealing with him?

Judge Lofton: It took time to hear his case, yes.

Harrill: Okay.

Judge Lofton: That I could have used otherwise.

Harrill: But this was not any particular threat to the way you run your court, was it?

Judge Lofton: Yes.

Harrill: Are you telling this Court here that it interferred with your handling of the other cases?

Judge Lofton: Yes. The obstinance and arrogance of this man interferred with my docket substantially.

Judge Lessenberry recited his findings:

Well, I've had an opportunity to look at State's Exhibit 1 and it is certainly my feeling that pleadings of that nature have an effect upon the Court and its orderly handling of business. It subjects the Court to ridicule, disrespect. It's particularly offensive. And at any time that anybody is confronted with something of that nature making those kind of accusations, I think it offends the Court and creates a hardship on the litigants and all those involved. * * * And by the ruling I am about to announce I don't find that specific instances or allegations in the motion are contemptuous. But I find that other specific areas and in them in total the motion is contemptuous. * * * If there is to be any confidence in our judicial system and the people who have made it a practice to learn about that sort of thing tell us that there is a substantial number of the public who don't have confidence in the judicial system. That Judges are honest. That Judges try to do justice. And even appear to try to do justice, then we are in a lot of trouble. And were someone like yourself who has been in the public's eye, who's bright person, sophisticated, makes allegations as you did of criminal conduct on the part of the Court, then not just Judge Lofton is injured, but indeed the justice system is injured. And I find that there is no basis whatsoever, no logical, reasonable basis for making some of these allegations. That the most casual kind of inquiry on your part would have disclosed that Judge Lofton had no mental—Criminal intent or involvement with these kind of acts. That there was a total disregard by you in the use of the kind of language in the choice of your words in accusing Judge Lofton of these kinds of acts. * * * Your recited reasons of getting this in the open, I don't think that the filing of this motion emphasized anything that wasn't already of record. I think it was used by you as a vehicle, that you yourself could justify to yourself alone as a means

of degrading Judge Lofton specifically and the Courts in general. Having so recited those matters I find you in contempt of court.

I apologize for the length of this dissent. But the question is plain. Do the courts or do people like Clark, bent on disrupting and destroying the legal system, prevail? Can the courts be insulted, criminally libeled and powerless to punish the criminal behavior? The majority not only find the document not contemptuous but also not disruptive. It was not a motion—it was an indictment. The respondent in this case is not Judge Lofton, it is the State of Arkansas. Judge Lofton represents the people. There is no end to Mr. Clark. He has carried his personal bitterness from his divorce case to the point of lawlessness. Judge Lofton could not ignore these criminal charges—to do so would be to condone criminal contempt for the law, the courts and the legal system. Actually, Judge Lofton showed considerable patience with this obsessed defendant.

Our entire system of law rests on the integrity of the judges and the respect the public has for the judges and the law. Those who can defy the courts and disrupt can destroy the system. This was no ordinary proceeding—this was no ordinary defendant. He went through three chancellors in his terroristic dispute and two separate criminal trials. Now he has been twice before us. He knew exactly what he was doing, and he did it deliberately. Just as he filed this pleading with no intention except to defame the judge and the court. These are the facts. Judge Lessenberry found them sufficient to support a finding of contempt and to not uphold that finding is wrong.

I respectfully dissent.

DUDLEY and GLAZE, JJ., join in the dissent.