JACK L. LESSENBERRY v. RICHARD B. ADKISSON AND JAMES R. HOWARD, JUDGES

73-95                                    499 S.W. 2d 835

Opinion delivered October 15, 1973

*Leon B. Catlett,* for petitioner.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for respondents.

*Amicus- Curiae* Arkansas Association of Criminal Defense Lawyers, by: *Wm. R. Wilson Jr.* and *Floyd J. Lofton.*

*Amicus Curiae* Professional Ethics and Grievance Committee of Arkansas Bar Association, by: *E. B. Dillon Jr.*

J. FRED JONES, Justice. The regularly elected judge of the Pulaski County Circuit Court, Fourth Division, ordered Jack L. Lessenberry, a practicing attorney in Little Rock, to represent Bonnie Jo Tenpenny at her jury trial on a charge of delivering a controlled substance consisting of heroin in violation of the state law. Lessenberry failed and refused to represent Mrs. Tenpenny at the trial presided over by a special judge. He was held in contempt by the special judge and a-fine of $1,000 was assessed against him. The matter is now before us on certiorari.

The pertinent facts appear as follows: On March 5, 1973, Bonnie Jo Tenpenny was arrested and placed in jail charged with the sale of heroin. She was first arraigned -in municipal court where Mr. Lessenberry appeared with her and assisted in obtaining her release from custody on bond. Mrs. Tenpenny was arraigned in circuit court on March 19. Mr. Lessenberry appeared with her at the arraignment, entered her plea of not guilty, requested a jury trial and also a bill of particulars. The case was passed to April 18, 1973, for a jury trial and the oral motion for a bill of particulars was granted. On April 9, 1973, Attorney Lessenberry wrote a letter to the presiding judge, Honorable Richard B. Adkisson, with carbon copies to Jeff Pence, Esq., Hon. Byron Southern and Mrs. Bonnie Tenpenny, which states as follows:

"Dear Judge Adkisson:

I appeared with Mrs. Tenpenny for arraignment and at that time, you set the case for a jury trial for April 18, 1973.

I had represented Mrs. Tenpenny in Municipal Court. I· told her, however, that I would not handle the matter in circuit court, especially in view of the trial date. I referred her to Jeff Pence and he has told me that Mrs. Tenpenny did not keep her appointment with him.

I wish to be relieved of this matter because I have so many obligations I am unable to satisfactorily discharge them all.

Please advise me what I must do to cause my name to be removed as Mrs. Tenpenny's attorney."

This letter was filed in the circuit clerk's office on April 10, 1973, and on the same date the record shows the following notation:

"The Court doth hereby deny Jack L. Lessenberry's request to be relieved as attorney of record in the above styled cause."

On April 10, 1973, Mr. Lessenberry wrote another letter to Judge Adkisson with copies to Hon. Byron Southern and Mrs. Bonnie Tenpenny as follows:

"I wrote you on April 9 advising you that I desired to be relieved from any obligation to represent Mrs. Tenpenny in the forthcoming trial of the above referenced case. In that letter, I requested your assistance and instructions as to what must be done to accomplish this. In that-letter, I set forth some of the reasons why I did not wish to represent Mrs. Tenpenny. There are other reasons which I did not think it appropriate or necessary to mention.

This morning I received a telephone call from your clerk notifying me that time was short and that I was expected to appear with Mrs. Tenpenny for trial of the case of April 18.

After due consideration of all of the circumstances, I will, of course, be present in court on April 18 as you directed, but I have decided that I will not represent Mrs. Tenpenny in this trial.

I have absolute respect for the court in general and in you particularly. In this regard, I will gladly serve the court in any professional and reasonable way, but I will not sacrifice what I believe to be overriding professional and personal standards."

This letter was filed in the clerk's office on April 11, 1973, and on the same date the trial judge entered an order as follows:

> "On this 11th day of April, 1973, is presented the matter of the motion of the attorney for the defendant to be relieved as counsel of record.
>
> The Court finds that on March 19, 1973, Mr. Jack L. Lessenberry appeared as attorney with and on behalf of the defendant at plea and arraignment at which time this case was set for a jury trial on April 18, 1973, at his request; and on April 10, 1973, Mr. Lessenberry filed a motion to be relieved as attorney of record in this case which motion was denied on the same day; and on April 11, 1973, by letter delivered to this Court, which is filed and made a part of the record herein, stated his intentions not to represent the defendant although his motion to be relieved as counsel was overruled.
>
> THEREFORE, the Court being well and sufficiently advised, Mr. Jack L. Lessenberry, is ordered to appear in this Court on April 18, 1973, and represent defendant on the trial of this case."

This order was filed on the following day, April 12, 1973, and a bill of particulars was mailed to Attorney Lessenberry on April 16. The record of the proceedings for April 18, 1973, recites as follows:

> "This day comes the State of Arkansas by James Neal, Deputy Prosecuting Attorney, and comes the defendant in proper person and by her attorney, Jack L. Lessenberry, and the defendant having previously entered a plea of not guilty, the State announces ready for trial and Mr. Lessenberry announces that the defendant is without counsel and not ready for trial; whereupon the Court doth reset the case for a Jury Trial on July 12, 1973."

The trial court then entered an order appointing the Public Defender to represent Mrs. Tenpenny and the Public Defender was advised by letter that he or one

of his deputies was that date appointed to represent the defendant in a jury trial to be held on July 12, 1973. The proceedings had on April 18, 1973, as above set out were held before the Honorable James R. Howard, Special Judge, the regular judge, Honorable Richard B. Adkisson, not being present. Following the April 18 proceedings as above set out, a hearing was conducted on the matter of contempt and from the evidence submitted, the court found as follows:

> "[T]hat Jack L. Lessenberry appeared with Bonnie Jo Tenpenny on March 19, 1973, as her regular, privately employed attorney, but that on April 9, 1973, he wrote the court requesting that he be relieved and that on April 10, 1973, the court denied the motion and, thereafter, by its order of April 12, 1973, Jack L. Lessenberry was to appear and represent the defendant on the trial of the case. The court further finds that Jack L. Lessenberry is, as a consequence, in contempt of court and should be punished accordingly."

Mr. Lessenberry testified that he had previously represented Mrs. Tenpenny on a misdemeanor charge in North Little Rock Municipal Court and that he was contacted by the defendant's husband who requested him to represent her on the drug charge. He said he advised her husband that he would be unable to represent her because of other commitments and that he suggested that they employ other counsel. He said that Mr. Tenpenny returned to his office requesting him to represent Mrs. Tenpenny and that he consented to represent her in municipal court for a fee of $250. He said he was only paid $100 but that he appeared in municipal court with the defendant and procured her release from custody on a reduced bond. He said that the first notice he had that Mrs. Tenpenny was being arraigned in circuit court was when Mrs. Tenpenny called him by phone and advised that she was then before Judge Adkisson on arraignment. He said that he had never agreed to represent Mrs. Tenpenny in the circuit court case and had not been advised of her arraignment. He said he was concerned, however, about the possibility that Mrs. Tenpenny might be under the erroneous impression that he was to represent her in circuit court, so he hurried over to circuit court where

she was being arraigned. He said Mrs. Tenpenny's case was immediately called after he arrived in court, and that he entered a plea of not guilty for her. He said he was asked if the defendant wanted a jury trial and he advised the court that she did. He said that he then requested that the defendant be provided with a bill of particulars and a sample of the substance she was alleged to have sold for chemical analysis. He said that the case was then set for jury trial on April 18 and that following these proceedings Mrs. Tenpenny attempted to pay him a fee but he refused to accept it.

Mr. Lessenberry said he does not recall whether he advised Mrs. Tenpenny at the arraignment that he would not represent her, but that he did advise her to bring her husband and come to his office as soon as possible, and that Mr. and Mrs. Tenpenny did come to his office two or three days later. He said that in the meantime, he had discussed the case with the prosecuting attorney and reviewed the file in the prosecuting attorney's office. He said that when Mr. and Mrs. Tenpenny returned to his office, he advised them of the essence of what the prosecutor's file contained and told Mr. and Mrs. Tenpenny that he very definitely could not accept employment in the case.

Mr. Lessenberry said that the prosecuting attorney asked him to sign a waiver of request for a formal bill of particulars in order to obtain access to the prosecuting attorney's file, but that he refused to sign the waiver. He said he told the prosecuting attorney that he could not represent Mrs. Tenpenny at the trial and did not want to do anything that would prejudice the rights of the attorney who might follow up his oral request for a bill of particulars. He said that when he advised the Tenpennys that he could not represent Mrs. Tenpenny, he assured them that he would assist them in getting a good, competent attorney, and that he would turn his entire file over to such attorney. He said he did call another attorney and made an appointment for the Tenpennys to talk with him, and that the attorney agreed to assist Mrs. Tenpenny. He said he does not remember whether he mentioned the trial date to the other attorney but that he did advise the other attorney that it was an urgent matter.

He said he then directed the Tenpennys to the office of the other attorney, and they left his office going to the other attorney's office. He said he heard nothing further concerning the matter until about April 6 when Mr. Byron Southern, as assistant to the prosecuting attorney, called and advised that he had prepared, and had available, a bill of particulars in the case. He said he advised Mr. Southern that he did not represent Mrs. Tenpenny, but that attorney Jeff Pence represented her. He said he knew that arrangements had been made for Mrs. Tenpenny to be represented by Pence and that she was supposed to pay Mr. Pence an agreed fee. He said he talked with Mr. Pence later on the afternoon of April 6 and that Mr. Pence advised him that Mrs. Tenpenny had not come to his office with his fee as she had agreed to do, and that he did not represent her. He said this all occurred on Friday, April 6, and on the following Monday, April 9, he wrote a letter to Judge Adkisson asking what he should do to be relieved as attorney of record in the case. He said that he did not hear directly from Judge Adkisson but that on the following day he received a telephone call from Judge Adkisson's clerk, Gayle Peters, advising him that Judge Adkisson had received his letter but was denying his request, and that he would have to go to trial in the case on April 18. He said that upon receipt of this information, he wrote the letter dated April 10 to Judge Adkisson. He said he delivered the letter April 10 to Judge Adkisson in person and discussed the matter with him for about 30 minutes on that date. He said he offered to disclose *in camera* the full reasons why he could not ethically represent Mrs. Tenpenny at the trial, but that Judge Adkisson closed the discussion by leaving for another appointment.

Mr. Lessenberry testified that Mrs. Tenpenny and her husband were fully aware that he was not representing them; that they had offered to pay him a fee to do so and he refused to accept it. He testified that he honestly believed that he could not adequately represent Mrs. Tenpenny and at the contempt hearing he offered to dictate into the record at a later date the specific reasons why he thought he would be unable to ethically and adequately represent Mrs. Tenpenny. The special trial judge then inquired as to whether or not Mr. Lessenberry was aware

of the order from Judge Adkisson requesting that he be in court that day to represent Mrs. Tenpenny and Mr. Lessenberry responded that he was.

Attorney Jack Holt, Jr. testified that Mr. Lessenberry called him on March 22 in regard to representing Mrs. Tenpenny. He said that Mrs. Tenpenny came to his office; that he introduced her to Jeff Pence, a young attorney in his office, and that Mr. Pence arranged for another attorney, Mr. Alexander, to assist Pence in representing Mrs. Tenpenny. He said that Pence advised him that he had discussed the matter with Mrs. Tenpenny and agreed on a fee of $500, which Mrs. Tenpenny had agreed to bring to the office. He said Mrs. Tenpenny subsequently advised that she was unable to obtain the money for the fee and that he then recommended to Mr. Pence that he check back with Mr. Lessenberry, or advise Mrs. Tenpenny to get in touch with the Public Defender.

Mr. Jeff Pence testified that he first met Mrs. Tenpenny on March 22 when she, together with her husband, came to his office upon referral first by Mr. Lessenberry and then by Mr. Holt. He said that he and attorney Hubert Alexander interviewed Mrs. Tenpenny on March 27 and they agreed on the amount of a fee. He said Mrs. Tenpenny advised them she did not have the money to pay their fee but that she probably could obtain it, so they set up another appointment for the following Friday at 4 p.m. when Mrs. Tenpenny said she would bring at least a part of the fee. He said that when Mrs. Tenpenny failed to keep that appointment, he so advised Mr. Lessenberry by telephone. He said he assumed that he did not represent Mrs. Tenpenny since she had not retained him to represent her. He said Mrs. Tenpenny later called and advised that she did not have any money and that he referred her to the public defender's office.

Mr. John Earl, assistant prosecuting attorney, testified that as a general practice in the prosecuting attorney's office, when a bill of particulars is requested by a defendant, the entire prosecutor's file is turned over to the defense attorney for copying in lieu of preparing a formal bill of particulars but in doing so, the defense attorney is required to sign a waiver .of demand for a bill of par-

ticulars. He said he discussed such waiver with Mr. Lessenberry but that after he and Mr. Lessenberry went over the file, Lessenberry refused to sign the waiver form. He then testified as follows:

"He [Lessenberry] was uncertain at that time as to whether he would take the case, and he didn't want to waive any rights of a later attorney that might take the case."

Mrs. Tenpenny testified at the contempt hearing. She said that her husband paid Mr. Lessenberry $100 to represent her in municipal court and that she never did pay him anything else except the $100. She said she received a copy of the letter dated April 9 from Mr. Lessenberry to Judge Adkisson, and that upon receipt of the copy of that letter she called the public defender's office and was advised that the Public Defender could not represent her unless the Judge said he could. She said that prior to that date Mr. Lessenberry had told her he was not going to represent her and referred her to Mr. Pence. She said she agreed to pay Mr. Pence a fee but when she was unable to get the money, she so advised Mr. Pence and he suggested she call the Public Defender. She said that after talking with the Public Defender, as above set out, she talked with Judge Adkisson by phone and he said for her and Mr. Lessenberry to be in court on the 18th.

At the conclusion of the above testimony at the contempt hearing, Special Judge Howard made the following findings and observations in part as follows:

"I don't know why Judge Adkisson insisted on this situation that developed here, but I'm looking at an order here that directs him to appear and try this case and based on this letter and his statement, he's in violation of the order. And I'm also looking at an oath that I took this morning that said, 'I'll faithfully discharge the duties of the office.' I tend to agree with Jack Holt and Jack Lessenberry about their attitudes toward representing certain people under certain circumstances. I've been in the same predicament. * * * I just don't see where I can do anything, as much as I hate to, but find you in violation

of this order and in contempt of court. I'll say this. You've got reasons, as Mr. Catlett observed, they're a little obscure at this point and it probably should remain that way because of the defendant's rights. He shouldn't be testifying here in public about something he might know that would be prejudicial to the defendant's case in the future. So, what I'll, the best way I know out of it is to find him in contempt, enter a fine without prejudice to his right to petition the judge that made this order. It's not my order. But without prejudicing him petitioning Judge Adkisson for a rehearing based upon any facts you'd like to dictate in private into this record. And further I would direct the clerk not to order any execution on this judgment until such time as you petition this court. And if you don't get any relief there, then I hope the Supreme Court will grant a Writ of Certiorari for review. But I know of no other authority other than but to do that. That'll be a Thousand Dollar fine."

The statement referred to was sealed in an envelope marked as exhibit 3 to Lessenberry's testimony and was made a part of the record. The envelope had not been opened when the record was filed in this court. The substance of the statement was to the effect that Mr. Lessenberry had never accepted representation of anyone he believed to be engaged in the sale or use of "hard" drugs. He said he advised Mrs. Tenpenny of the probable evidence that would be presented against her and that while she denied to him that she had made the specific sale to the police officer involved in the particular case, he concluded from his interviews with her that it would be necessary to prepare a completely fictitious defense in order to represent her as she desired to be represented. He said he honestly believed he could not provide her with effective representation, but that he did not relate to her the specific reasons why he could not accept employment from her,

The record in this case presents an unfortunate series of misunderstandings that simply should not arise in a court of law. A client, of course, who has contracted for the services of an attorney, may discharge his attorney

with or without cause (*Gentry* v. *Richardson,* 228 Ark. 677, 309 S.W. 2d 721) and it goes without saying that an attorney has the right to withdraw from his contract with a client when he does so with the client's consent and approval and when the rights of others, or the administration of justice, are not affected by such action. Both sides in the case at bar cited the Florida case of *Fisher* v. *State,* 248 So. 2d 479, which was a civil case in which an attorney attempted to withdraw as counsel during the course of litigation and the trial court required him to continue to represent his clients. The Florida Supreme Court held that it was beyond the power of the trial court to require the attorney to continue to represent the clients in that particular case; and the Supreme Court did hold in essence, that a trial court has the power to enforce the orderly conduct of the business of the court and has inherent power to require attorneys who appear in cases before the court, to conduct themselves in such manner, and follow such procedures, that the attorneys' actions do not interfere with, or unduly delay, the handling of the cases. In *Fisher* the Supreme Court said:

"This power, however, derives from the responsibility to effectively conduct the business of the Court. It does not mean that the requirement of consent by the Court to such withdrawal includes the power to compel an attorney to continue in the representation of a party when he complies with rules for withdrawing or gives due notice to his client of his intention to withdraw, unless *unusual circumstances* exist which would interfere with the orderly processes of the Court. . . . "

Most of the cases dealing with the subject are based on attempted withdrawal of an attorney either without the consent of the client or at such time that a withdrawal interferes with the orderly conduct of court business. In the Colorado case of *Riley* v. *District Court In & For Second Judicial Dist.,* 507 P. 2d 464, the court stated the general rule as follows:

"As a general statement, an attorney who undertakes to conduct an action impliedly stipulates that he will prosecute it to a conclusion. He is not at liberty

to abandon the suit without reasonable cause. Furthermore, an indigent defendant cannot dismiss appointed counsel without permission of the court. Likewise, counsel for an indigent defendant cannot withdraw without permission. Although never explicitly stated by this court, it seems to be the well-stated rule of law that motions for withdrawal of counsel are addressed to the discretion of the court and will not be reversed unless clear error or abuse is shown. We agree with those statements contained in People v. Wolff, 19 Ill. 2d 318, 167 N.E. 2d 197, wherein it was said:

' * * * A motion by an attorney for leave to withdraw for any reason is addressed to the sound discretion of the court and, like all motions, it may or may not be meritorious. For that reason, a burden rests with the moving party to prove to the court's satisfaction the legitimacy of the request, and when the petitioner either fails or refuses to do so, the court may properly deny the motion. * * * ' "

See also *Foley* v. *Peckham*, 256 So. 2d 65; *Singleton* v. *Foreman*, 435 F. 2d 962; *Phoenix Mut. L. Ins. Co.* v. *Radcliffe on the Del., Inc.*, 266 A. 2d 698.

It would appear from the record before us, that Attorney Lessenberry as well as the defendant Mrs. Tenpenny never considered Lessenberry as having been employed to represent her. It would also appear, however, that at her arraignment in circuit court the trial judge had ample reason to believe that Mr. Lessenberry had been employed to represent the defendant, and that he was in the performance of his duty under such employment in entering her plea of not guilty and requesting a jury trial and a bill of particulars. This arraignment was on March 19 and on that date the case was set for jury trial on April 18. It appears that after Mr. Lessenberry ascertained the evidence the state proposed to present against the defendant, and after conferring further with her, he concluded that he could not properly, conscientiously and adequately represent Mrs. Tenpenny and he so advised her on or about March 22. It appears from the record that Mr. Lessenberry reasonably believed he had

fulfilled his obligation to Mrs. Tenpenny as a practicing attorney by helping her procure other counsel who would represent her at the trial.

It is apparent from the full record before us, that by March 22 Mr. Lessenberry had learned from the defendant matters he was unwilling to reveal to the trial judge as reasons he could not properly represent the defendant in view of the possibility that the defendant, through other counsel, might still waive a jury trial and be tried by the judge sitting as a jury. If Mr. Lessenberry was convinced of the defendant's guilt to the extent he could not properly represent her, and if she was insisting that he prepare a fictitious defense in her behalf, he of course was correct in requesting that he be relieved as attorney of record; and, perhaps Judge Adkisson was hasty in summarily refusing to honor Mr. Lessenberry's request even as late as April 9 without discussing the matter with Lessenberry.

It must be remembered in this case that Judge Adkisson did not *appoint* Mr. Lessenberry to represent the defendant, but simply ordered Lessenberry to appear in court and represent the defendant on April 18. Even though Mr. Lessenberry's letter of April 9 was some twenty days after he appeared as attorney for Mrs. Tenpenny at plea and arraignment, it was also nine days prior to the trial date and there is no evidence in the record before us that his withdrawal on that date would have interfered with the orderly conduct of the court's business.

The Texas case of *Ex Parte Mays,* 212 S.W. 2d 164, was a case in many respects much like the case before us. In that case an attorney was *appointed* to represent the accused as an indigent person. The trial judge had been unable to get in touch with the attorney prior to the appointment and the attorney asked to be relieved from the appointment because he had participated in the investigation of the case and his familiarity with the facts convinced him of the defendant's guilt and made it impossible for him to properly and conscientiously represent the defendant. The trial court refused to relieve the attorney and following a contempt hearing a fine of $100 was assessed against him. The Court of Criminal Appeals on certiorari, held that in order to hold the attorney guilty

of contempt, he must have refused to do the particular act commanded by the court and *which ought to have been done,* and in that case the court said:

> "In the present matter, as the record now stands, we do not think the trial court had authority to cause relator to do a thing which was contrary to good conscience and for which no man ought to be punished for failing to do."

In the absence of evidence pertaining to interference with the orderly conduct of the court's business, other than the mere fact the case was set for jury trial on April 18, we conclude that the trial court should not have summarily refused Mr. Lessenberry's request to be relieved as attorney of record without first ascertaining the status of his supposed employment, or the full reasons for his refusal to accept employment to represent the defendant. The judgment of the special trial judge holding Lessenberry in contempt is therefore reversed, and the cause dismissed.

Reversed and judgment quashed.

FOGLEMAN, J., not participating.