Marlin A. POWELL and Nancy H. Powell *v.* Hugh F. BURNETT, M.D.

90-152 805 S.W.2d 50

Supreme Court of Arkansas
Opinion delivered March 4, 1991
[Rehearing denied April 1, 1991.]

*James S. Cox & Associates*, and *Boswell, Tucker & Brewster*, by; *Ted Boswell*, for appellant.

*Friday, Eldredge & Clark*, by: *Laura Hensley Smith*, for appellee.

DAVID NEWBERN, Justice. This is a medical malpractice case. The appellants, Marlin A. and Nancy H. Powell, husband and wife, alleged that Dr. Hugh F. Burnett was negligent in performing artery bypass surgery to correct Mr. Powell's abdominal aneurysm. The case was tried to a jury which returned a verdict in favor of Dr. Burnett. The Powells contend the trial

Court erred by (1) not granting a mistrial when counsel for Burnett asked a doctor testifying on behalf of the Powells about a case in which the witness was a defendant, (2) by allowing a doctor testifying in favor of Burnett to go beyond the "ultimate issue" and tell the jury how it should decide, and (3) by allowing a witness for Burnett to testify as to Burnett's reputation for truthfulness. We hold that (1) the error on which the motion was based was insufficient to cause a mistrial, especially in light of an admonition by the Court to the jury to disregard the question and the answer, (2) there was no timely objection to the testimony telling the jury how to decide, and thus no reversible error, and (3) the evidence as to Burnett's reputation for truthfulness was properly admitted, as the Powells had placed the matter in issue. The judgment is affirmed.

As a result of the surgery, Marlin Powell suffered loss of bowel and bladder control, necrosis of buttock tissue, and other injuries caused by cessation of the flow of blood to his pelvic region and lower extremities. Burnett contended the injuries were unavoidable because he had to tie off arteries due to other, unanticipated aneurysms he encountered after the surgery began. The Powells contended the extended surgery was unnecessary and was intended for a different patient but was mistakenly, negligently, performed on Marlin Powell. They offered evidence that Burnett's surgery notes made no reference to the additional, unanticipated aneurysm he said he found, and that Burnett was thus not telling the truth.

## 1. Mistrial

During cross-examination, counsel for Burnett asked Dr. Mills, a witness for the Powells, whether he recalled a case involving Joyce Parker. He replied that he did, and then counsel asked, "It's a case against you personally, was it not?" The Powells' counsel sought a mistrial. Counsel for Burnett argued she was inquiring about Dr. Mills's testimony in the other case to show that he used a different standard there with respect to record keeping than he was advocating in this case as the norm.

The focus of the Powells' accusation against Dr. Burnett was that the "operative notes" he made about the surgery contained nothing about the additional aneurysms he later said caused him to tie off the blood supply. Dr. Mills testified, in effect, that a

doctor should write down everything occurring in the course of surgery. The purpose of cross-examining Dr. Mills with respect to the Joyce Parker case, in which he had been a defendant, was to impeach him by showing that he had once testified to the contrary. In the course of the discussion in the judge's chambers, it became apparent that in the Joyce Parker case, the question was whether Dr. Mills had had a conversation with his patient on a certain day when he asserted he had informed her of possible complications from surgery. Apparently there was no "nurse's note" showing that he had visited the patient at the time he contended he had informed her or obtained her "informed consent" to the surgery.

At the point it became clear that all Dr. Burnett's counsel had to cross-examine Dr. Mills about the "nurses' notes" rather than physicians's "progress notes" or "operative notes," the judge ruled that the cross-examination would be too "collateral;" however, the judge clearly stated that Burnett's counsel could cross-examine about the matter of notations regarding "informed consent" of the patient. The judge ruled that Dr. Mills's testimony was subject to impeachment, but that the fact that the previous testimony was given in a case in which Dr. Mills was the defendant was irrelevant.

Upon returning to the presence of the jury, the Court instructed that the jury was to disregard the question and response indicating that Dr. Mills had been a defendant. Burnett's counsel proceeded to ask questions based on Mills's testimony in the case of Joyce Parker. The questions and answers made it obvious that Mills was the defendant in that case, but no further objections were made by counsel for the Powells.

The only legal standard argued to the trial court was that of A.R.E. 403, although the Rule was not mentioned by name or number. The discussion in the judge's chambers was long, and his ruling was somewhat fluid or evolving. The Court seemed to agree with Burnett's counsel that the fact that Mills was a defendant in a case where he might have stated a different standard of care was relevant because it revealed his possible reason for stating a different standard. He referred to "damage" having been done. After refusing the mistrial, he asked counsel's help in solving the problem in a manner which would cause the fewest further

problems. The wording of the admonition given to the jury was suggested by counsel for the Powells. Dr. Burnett's counsel said several times that she planned to go further with her examination of Dr. Mills on the basis of the Parker case transcript and that it would become obvious that Mills was the defendant in that case. The Court remarked that it would be necessary to evaluate the questions when asked and answers when given.

The contention, again, is that informing the jury that Dr. Mills had been sued for malpractice was so prejudicial as to outweigh the probative value of his testimony stemming from the Joyce Parker case. The Powells asserted that the sole purpose of Burnett's counsel was to introduce the fact that Dr. Mills had been a defendant in a malpractice action. This, they say, is borne out by the fact that Burnett's lawyer was unable to refer to anything in the Joyce Parker case other than an instance of Dr. Mills possibly excusing incompleteness of notes made by a nurse in connection with that case rather than progress notes or operative notes for which Mills would have been directly responsible.

On appeal, the Powells argue Rule 403 specifically, saying that relevant evidence may be excluded under the Rule, citing *Cullum & Boren* v. *Peacock*, 267 Ark. 479, 592 S.W.2d 442 (1980), and *Golden* v. *State*, 10 Ark. App. 362, 664 S.W.2d 496 (1984). In both cases it was held on appeal that the trial Court erred in admitting evidence the probative value of which was outweighed by the danger of unfair prejudice. Neither case held that a mistrial should have been granted.

Although, as the Powells have pointed out, the Court apparently thought that "damage" was done by the question and answer revealing that Dr. Mills was once sued for malpractice, we have been cited to no holding that such a revelation is unfairly prejudicial impeachment. If it is unfairly prejudicial, the admonition may have cured it at least up until the time the further questions and answers from the Joyce Parker transcript made the fact obvious.

A trial court has considerable discretion in deciding whether to grant a mistrial, *Dickerson Const. Co.* v. *Dozier*, 266 Ark. 345, 584 S.W.2d 36 (1979). It is an extreme remedy to be taken only when it is apparent that justice cannot be served by

continuing the trial. *Morton* v. *Wiley*, 271 Ark. 319, 609 S.W.2d 332 (1980). That is especially so where an admonition has been given in an attempt to cure erroneously admitted testimony. We find no abuse of discretion in the refusal of a mistrial.

## 2. Testimony telling the jury the result to be reached

While testifying as a witness on behalf of Dr. Burnett, Dr. Crow stated that the complication experienced by Mr. Powell was very rare "and for this to be construed as malpractice in any court would be a great disservice to any future patient that we have with aneurysm disease." The Powells contend this Court has made it clear that, while an expert may give his opinion embracing the ultimate issue in the case, it is impermissible for him to "instruct the jury as to the proper verdict" to be reached. *See Aetna Cas. & Sur. Co.* v. *Broadway Arms.*, 281 Ark. 128, 664 S.W.2d 463 (1984); *Grambling* v. *Jennings*, 274 Ark. 346, 625 S.W.2d 463 (1981).

 We decline to consider this point, as no objection was made when the testimony was elicited. The Powells cite *Walt Bennett Ford, Inc.* v. *Brown*, 283 Ark. 1, 670 S.W.2d 441 (1984), for the proposition that a specific ground of objection need not be stated when the error is obvious from the context. That is a correct citation of the case, but it does not mean that no *objection* need be made, only that a *specific ground* need not be stated.

█ During oral argument before us, counsel for the Powells noted that a tactical decision had been made not to object to Dr. Crow's testimony because it would look to the jurors as if counsel were trying to suppress the testimony of a "home town" doctor. While we sympathize with the tactical position in which counsel was placed, we know of no authority which would permit reversal on the basis of an objection counsel would like to have made but chose not to for tactical reasons.

## 3. Reputation for truthfulness

By motion in limine, Dr. Burnett's counsel was prohibited from inquiring as to Burnett's general reputation as a surgeon. The Powells contend the Court's order was violated by questions asked by Dr. Burnett's counsel of Dr. Jouett, an expert witness presented by the Powells, as follows:

Q Have you ever known of Dr. Burnett to lie about his care and treatment of a patient?

A No.

Q Have you ever heard of him doing surgeries that were absolutely unnecessary?

A No.

Q Do you know of his reputation in the community?

A It's good. It's excellent.

***

Q Are you familiar with his reputation as a vascular surgeon in this community?

[Objection sustained.]

***

Q Have you ever known Dr. Burnett to not be truthful in his treatment of patients?

A I have not.

Q Have you ever known of Dr. Burnett to perform unnecessary surgery?

A I have not.

[Objection overruled.]

■ Whether Dr. Burnett was telling the truth as to what he saw and what he did during the operation was made an issue by the Powells, thus making the testimony in response as to Dr. Burnett's reputation for truthfulness specifically admissible in accordance with A.R.E. 608(a). *See Brown* v. *Conway,* 300 Ark. 567, 781 S.W.2d 12 (1989); *Goodwin* v. *Harrison,* 300 Ark. 474, 780 S.W.2d 518 (1989). The question as to Dr. Burnett's general community reputation was improper; no objection was made. The question about Dr. Burnett's reputation as a vascular surgeon was improper; an objection was sustained. The question whether Dr. Jouett knew of Dr. Burnett performing unnecessary surgery was proper, as it went to the question of truthfulness raised by the

Powells' the objection was properly overruled.

Citing *Alexander* v. *Chapman*, 289 Ark. 238, 711 S.W.2d 765 (1986), the Powells contend counsel for Burnett "intentionally violated the pre-trial order in an effort to draw objections from counsel for the Powells. Counsel for the Powells was left in the precarious position of objecting to questions regarding . . . [Dr. Burnett's] overall competence and general reputation, thereby alienating the jury."

In our opinion in the *Alexander* case, we referred to the situation there as "unique." We noted instances where counsel for the appellee had violated an in limine order, but concluded they became "more significant" when combined with the fact that counsel for the appellee had simply refused to follow the court's order to stop asking leading questions. That resulted in 28 objections, 14 of which were sustained, nine of which were overruled, three were not ruled upon, and two were withdrawn. The judge, in attempting to deal with the problem, admitted to counsel that he had lost control of the trial, and we found prejudice from the cumulative effect of the leading plus violations of an in limine order.

In this case the problems as described in the Powells' brief, was far less severe. If there was a concerted effort by Burnett's counsel to ride roughshod over the judge, it is not evident from the cited parts of the record, and it does not reach the level of prejudice sufficient for reversal which we found in the *Alexander* case.

Affirmed.