Henry HODGES *v.* Alice S. GRAY, Chancellor,
Pulaski Chancery Court (First Division)

94-1191                                                  901 S.W.2d 1

Supreme Court of Arkansas
Opinion delivered June 12, 1995
[Rehearing denied July 17, 1995.*]

*Brown and Roaf, JJ., not participating.

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Tim Humphries*, Deputy Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant Henry Hodges, an attorney, appeals from being four times held in contempt of court by Chancellor Alice Gray for contumacious statements made during the argument of a child custody case. Appellant Hodges represented Pamela Skokos, the former wife of Theodore Skokos, also a member of the bar, in an extended divorce and child custody case. The record clearly reflects a contest of wills between counsel and the chancellor. At one point, Ms. Skokos petitioned this court for a writ of certiorari to disqualify Chancellor Gray from hearing the case because of her bias and prejudice. *Skokos* v. *Gray*, 318 Ark. 571, 886 S.W.2d 618 (1994).

I.

Chancellor Gray moves for this court to dismiss this appeal because of the doctrines of either *res judicata* or law of the case. In support of the argument, she states that in our earlier denial of *certiorari* we wrote:

> Our consideration of Ms. Skokos's allegations in response to her petition for *certiorari* will preclude us from considering them again, should there be a later appeal. *Henderson Methodist Church* v. *Sewer Improvement Dist. No. 142*, 294 Ark. 188, 741 S.W.2d 272 (1987); *Bertig Bros.* v. *Independent Gin Co.*, 147 Ark. 581, 228 S.W.2d 392 (1921); Note, 17 Ark. L. Rev. 193 (1963).

*Id.* at 573, 886 S.W.2d at 621.

Our statement about the consequences of seeking *certiorari* is a correct statement of the law, but it is not applicable to this appeal by appellant Hodges. The issue decided in *Skokos*

v. *Gray* was whether, because of bias and prejudice, a writ of *certiorari* should direct the chancellor to refrain from hearing the divorce and custody case involving the Skokoses. Appellant Hodges has never asked the chancellor to refrain from holding him in contempt of court because of bias or prejudice against him. Because both the parties and the issues are different, neither doctrine applies, and we decline to dismiss this appeal.

## II.

Appellant Hodges's first assignment is that the trial court erred in summarily holding him in criminal contempt on each of the four occasions because the evidence was insufficient. We affirm the holdings of contempt on the first two occasions and reverse and dismiss the second two holdings.

## A.

■■ Summary punishment for contempt committed in the "presence or hearing" of the court is an inherent power and is specifically reserved to the courts by the constitution. *Yarbrough v. Yarbrough*, 295 Ark. 211, 748 S.W.2d 123 (1988). This case involves criminal contempt, as fines were imposed and the punishment could not be avoided by performing an affirmative act. *See Fitzhugh* v. *State*, 296 Ark. 137, 752 S.W.2d 275 (1988). The standard of review of a case of criminal contempt is settled. An appellate court views the record in light most favorable to the trial judge's decision and will sustain the decision if supported by substantial evidence and reasonable inferences therefrom. *Yarbrough*, 295 Ark. at 212, 748 S.W.2d at 123.

## B.

The facts leading up to each of the four holdings of contempt are set out in sequence in order to address appellant Hodges's argument that "the contempt findings against [him] are legally insufficient." Different parts of the divorce case had been tried over a period of fifteen months. All of the evidence on child custody had been presented, but even after that long period of time, custody had not been finally determined. During the fifteen months of proceedings, Ms. Skokos's attorneys, appellant Hodges and co-counsel Robert L. Robinson, twice filed petitions asking Chancellor Gray to disqualify because of an alleged bias and preju-

dice against Ms. Skokos. They aggressively pursued the petitions, but the chancellor refused to disqualify. Subsequently, the chancellor set August 25 as the date for final arguments on the child custody issue. Each side was allotted ten minutes to argue the custody issue.

On August 24, 1994, the day before the arguments on custody were scheduled to be heard, appellant Hodges filed a complaint against Chancellor Gray with the Arkansas Judicial Discipline and Disability Commission. The complaint alleged that in an unrelated case Chancellor Gray ordered her law clerk, who was not qualified to serve as a special judge, to grant a divorce for another of Hodges's clients. On that same day, appellant filed a third motion on behalf of Ms. Skokos requesting Chancellor Gray to disqualify, this time because of the complaint before the discipline commission.

On the 25th, when the arguments were scheduled to begin, Robert Robinson, Hodges's co-counsel, asked the chancellor to hear the third motion to recuse. She declined and ordered the attorneys to argue the custody matter. Robinson insisted on making a record, but the chancellor repeatedly told him that each side was allowed only ten minutes to argue the custody matter and that he would be removed from the courtroom if he continued to try to argue the disqualification matter. Robinson stated that at prior hearings involving the other motions to disqualify, the chancellor had declined to rule on substantive motions until she had decided on the motions to recuse. The chancellor replied that this hearing was for final arguments on custody, no new evidence was to be presented, and there was no need to decide the recusal question before hearing closing arguments.

Perlesta A. Hollingsworth, one of the attorneys for Mr. Skokos, moved to withdraw his motion for an immediate ruling on permanent custody and asked instead to argue only the issue of temporary custody. Appellant Hodges responded that there had been no notice of a hearing on temporary custody, and if the chancellor "[got] into that issue [she would] need to get into these other issues, as well." The chancellor instructed appellant Hodges to let Mr. Hollingsworth finish his statement, but appellant continued to respond to the motion. During Mr. Hodges's response, he first stated that there had been no notice of a tem-

porary hearing and then renewed his argument that the chancellor should hear the motion to disqualify. The chancellor ruled that the hearing would proceed with the final arguments as originally scheduled and that appellant Hodges would not be allowed to present the motion to disqualify at that time. Mr. Hodges then asked if the hearing could be recessed until the chancellor heard the motion to dismiss. The chancellor denied the motion.

Mr. Hollingsworth again asked for a hearing on temporary custody. Appellant Hodges stated, "Now, is Mr. Hollingsworth now changing the Court's view as to whether we are going to have final arguments and close this custody case period?" The chancellor asked for appellant Hodges's response to Hollingsworth's request, and he replied that he wished to proceed with closing arguments, but again objected to her refusal to first hear the disqualification motion because it was a departure from her policy in the past.

Finally, appellant's argument on custody began as follows:

May it please the court, Judge, this has been a long case and you are now hearing final arguments, as I understand it, on the custody issue.

I thought to myself, how can I convince you coming over here that Mrs. Skokos, a wife of 27 years, ought not to be parted from her 13 year old daughter and I am convinced that I can't convince you because you made up your mind previously.

I think you made up your mind when you removed this lady and her 12 year old daughter at the time from her marital home on Edgehill.

The chancellor instructed Mr. Hodges that this was not the time to criticize the court's decisions, but to summarize the evidence in closing argument.

Mr. Hodges's reply was:

I am entitled, Your Honor, respectfully suggest to you that I am entitled to make my closing arguments.

You have given me — after 15 months in this case on custody you have given me ten minutes to summarize it

and *I think I am entitled to use those minutes however I so choose. Now, that is exactly what I think and I am going to continue.* (Emphasis added.)

At this point, Chancellor Gray held appellant in summary contempt and amerced a $200.00 fine. The chancellor additionally noted the presence of the newspaper reporter and television camera, and said, "You have the media waiting and you can also appeal. You have other remedies but your ten minutes here is not going to be allocated for that." Appellant Hodges asked, "Is what you just said counted against my ten minutes?"

1.

Appellant Hodges argues that the foregoing facts are legally insufficient to support the holding of summary contempt. A subsequent written order notes that the holding of contempt was made because appellant "refused to follow the Court's directions."

An act is contemptuous if it interferes with the order of the court's business or proceedings, or reflects upon the court's integrity. *Carle* v. *Burnett*, 311 Ark. 477, 845 S.W.2d 11 (1993); *see also Edwards* v. *Jameson*, 284 Ark. 60, 679 S.W.2d 195 (1984). The inherent power to punish for contempt should never be exercised except where the necessity is plain and unavoidable if the authority of the court is to continue. *Edwards*, 284 Ark. at 63, 679 S.W.2d at 197 (citing *Freeman* v. *State*, 188 Ark. 1058, 69 S.W.2d 267 (1934)). The court's contempt proceedings are to preserve the power and dignity of the court, to punish for disobedience of orders, and to preserve and enforce the rights of the parties. *Id.* An attorney should not engage in conduct which offends the dignity of the court. *Davis* v. *Goodson*, 276 Ark. 337, 635 S.W.2d 226 (1982). An attorney may make a proper objection to a ruling of the court, but then should abide by the ruling so long as it remains in effect. *Id.* at 339, 635 S.W.2d at 227.

Here, the chancellor clearly and repeatedly instructed the attorneys that she was not going to hear a third motion to disqualify at that time and that the hearing was limited to argument on the custody issue. Counsel should have followed the court's ruling and limited comments to the custody issue. Instead, appellant repeatedly brought up the motion to recuse in clear

defiance of the court's order. Finally, appellant stated that he was going to use his time for closing argument however he chose. Viewing the record in the light most favorable to the trial judge, as we must do, *Yarbrough*, 295 Ark. at 212, 748 S.W.2d at 123, there is sufficient evidence to support the holding of contempt.

## 2.

Appellant proceeded with final argument and stated: "In spite of what this Court has ruled in the past I think the real issues are very, very clear," adding that "there is no worse case scenario than for fifteen months what this court has allowed. . . ." Next he began to address factors a chancellor ought to consider in determining child custody. The argument, which immediately precedes the second holding of contempt, was as follows:

> And the last thing is love and affection. Let's talk about the first point. Mr. Skokos's moral fitness. Now, where does that begin? That begins when he had sexual relations in their marital home — not in their marital home but in their marital bed.

> Now, Judge, are you going to listen to me or are you going to —

> THE COURT: That is Fifty Dollars, Mr. Hodges.

The subsequent written order notes that the remark was made when the court "summoned the bailiff." Appellant Hodges later described it as the court "visiting" with the bailiff. The transcript provides no additional information. An audio tape included in the record only adds the fact that this occurrence took place very quickly. Viewing the evidence and all reasonable inferences as we must, the remark, when taken in context of the entire argument, constitutes substantial evidence to support the holding of contempt. Appellant Hodges's argument, with all reasonable inferences, was that the chancellor was biased and had already made her mind up about the case, that she had allowed a worst case scenario to take place, and now, because she summoned the bailiff or visited with the bailiff, she would not even listen to him. The statement was disrespectful and tended to impair the respect due the court's authority. Thus, it was contumacious. *See* Ark. Code Ann. § 16-10-108(a) (Repl. 1994).

16

### 3.

■ Immediately after the chancellor summarily fined appellant for the foregoing comment, appellant responded, "Well, I would like the record to show that you are visiting with Billy the bailiff." Chancellor Gray then held appellant in summary contempt and fined him for the third time.

Appellant Hodges's argument is well taken that the statement, even when taken in context of all the other statements, did not constitute a disrespectful or derogatory remark and did not constitute a violation of an instruction by the court. Rather, it shows that appellant was attempting to have the record accurately reflect, for the purpose of this appeal, that the chancellor said something to the bailiff. That was entirely proper. Further, there is nothing to indicate that the reference to "Billy the bailiff" was anything other than an attempt to identify the person to whom the chancellor spoke.

### 4.

The chancellor had previously fined one of Mr. Skokos's attorneys for using the word "bullshit" during an argument and had ordered the attorneys not to use inappropriate language. In his argument on custody, appellant Hodges stated that the minor child's attorney ad litem had a conflict of interest, but still the chancellor refused to disqualify the attorney ad litem. Appellant Hodges argued to the court that this refusal placed Ms. Skokos in an impossible position because she was criticized by the attorney ad litem if she did not give Mr. Skokos visitation, but when she allowed Mr. Skokos to visit the child, he refused to return the child to her and claimed he had full custody. Appellant concluded that, as a result, Ms. Skokos was "damned if she does and damned if she doesn't." At that point, the chancellor, for the fourth time in the hearing, held appellant in summary contempt for using "that language."

■ The subsequent written order states that the court had warned appellant not to use inappropriate language "such as hell and damned." Again, appellant Hodges's argument is well taken that there is no substantial evidence to support a holding of contempt. *Rosenzweig*, 295 Ark. at 585, 751 S.W.2d at 734. It is clear from the statement that the words were not used as expletives.

■ Before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties imposed on him, and the command must be express rather than implied. *Lilly* v. *Earl*, 299 Ark. 103, 771 S.W.2d 277 (1989). When, under the circumstances and the legal issues involved, a party does all that is expressly required of him, it is error to hold him in contempt. *See Wood* v. *Goodson*, 253 Ark. 196, 485 S.W.2d 213 (1972). When there is nothing in a court order to indicate a party's specific duty to do something, then this court has refused to find that the party is in contempt. *See Lilly*, 299 Ark. at 111, 771 S.W.2d at 281.

■ The earlier order of the chancellor did not constitute notice that a word that is sometimes used as an expletive could not be used in another context. The United States Supreme Court has held that even the use of street language or vernacular cannot constitutionally support a conviction of criminal contempt when it was not directed at the judge or any court officer and did not constitute an imminent threat to the administration of justice. *See Eaton* v. *Tulsa*, 415 U.S. 697 (1974) (holding that the accused's use of the word "chicken shit" to describe his assailant during cross-examination did not constitute a threat to the court).

In summary; we hold that there was substantial evidence to support the first two holdings of contempt, but there was no basis for the second two. Accordingly, at this point, we reverse and dismiss the second two holdings of contempt.

### III.

■ Appellant next argues that, even if there was substantial evidence of contempt on the first two occurrences, he had a right to criticize the judge, who is a public official, under the First Amendment. In support of the argument he cites *New York Times* v. *Sullivan*, 376 U.S. 254 (1964). The argument is without merit because even protected speech is not equally permissible in all places at all times. *Cornelius* v. *NAACP Legal Defense Fund, Inc.*, 473 U.S. 788, 799 (1985). In general it may be said that the State may place reasonable time, place, and manner restrictions on speech that takes place in a public forum. Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law* § 20.47 at 296 (2d ed. 1992).

■ The history and development of contempt proceedings do not suggest such a restrictive interpretation of contempt powers that courts would be rendered powerless to enforce orderly sanctions for misconduct by members of the bar and would be rendered powerless to insure that justice and fairness took place. Rather, the powers of contempt are reasonable as applied to time, place, and manner restrictions on freedom of speech. *Cornelius*, 473 U.S. at 806; *see also Spencer* v. *Davis*, 290 F. Supp. 531 (W.D. La. 1968).

## IV.

■ Appellant next contends that even though the evidence is sufficient on the first two holdings of contempt, reversal is mandated because of lack of notice and opportunity to defend and because the determination should be made by another judge. However, neither argument was made in the trial court, either during the custody hearing or in a later motion. This court does not address arguments raised for the first time on appeal. Even constitutional arguments are waived on appeal if they are not raised at trial. *Stewart* v. *Winfrey*, 308 Ark. 277, 824 S.W.2d 373 (1992); *Powell* v. *Burnett*, 304 Ark. 698, 805 S.W.2d 50 (1991). Thus, we do not address that point of appeal.

Affirmed in part; reversed and dismissed in part.

BROWN and ROAF, JJ., not participating.

CORBIN, J., and Special Justice BLAIR ARNOLD dissent.

BLAIR ARNOLD, Special Justice, Dissenting. I respectfully dissent from the majority's affirmance of the first and second contempt findings in this case. I believe these findings of contempt reflect an overly sensitive reaction by the Chancellor to reasonable efforts of appellant to try his case under very difficult circumstances.

## BACKGROUND

To properly analyze this case, I believe a thorough scrutiny of the background is critical. As stated by Special Justice Kathleen V. Compton in her dissent in *Skokos* v. *Gray*, 318 Ark. 571, 886 S.W.2d 618 (1994):

The transcript and briefs in this case indicate very

clearly that there is acrimony between Chancellor Gray and the attorneys for Ms. Skokos. In fact, Chancellor Gray has made comments on the evidence which indicate her displeasure with Ms. Skokos as well. She challenged Ms. Skokos' credibility and she advised Ms. Skokos that she felt Mr. Skokos was "more conciliatory." She commented that it appeared that Ms. Skokos "wanted everything" — specifically, custody of the parties' minor child, possession of the marital home, and money. It is not mentioned by the Court that Mr. Skokos also wants those same things. In fact, in the majority of divorce cases, these are the common bones of contention and the reasons for litigation. They hardly were revolutionary requests. Chancellor Gray has a duty to be "fair and impartial" to all litigants in her Court, and her commentary is unnecessary. . . .

The Chancellor on more than one occasion refused to allow attorneys for Ms. Skokos to make a record. She interrupted during their questions and their arguments. She routinely reminded them of the time constraints being imposed by the Court. She engaged in a running commentary about their demeanor. She also testified from the bench during a recusal hearing.

*Id.* at 578, 886 S.W.2d at 622.

Additionally, the record reflects a number of rulings and decisions by the Chancellor which were questionable at best. I feel it is helpful to list some of these. First, the Chancellor refused to consider certain motions. Second, the Chancellor moved Ms. Skokos and her twelve-year-old daughter out of the marital home despite the admitted adulteries of Mr. Skokos, some of which occurred in the home, because of her "policy" of always removing the complaining party in a divorce from the home. Third, the Chancellor falsely accused appellant's co-counsel of misconduct in preparing a precedent when the record reflects that his precedent either accurately reflected her rulings or at least was an honest interpretation of those rulings. Fourth, the Chancellor refused to set an amount of spousal support on the basis that there was no proof as to Mr. Skokos' income despite the fact that the parties' 1992 Income Tax Return was produced and Mr. Skokos' 1993 income was stipulated. Fifth, the Chancellor ruled that Mr.

Skokos did not need to provide support directly to Ms. Skokos because she was financially irresponsible. This ruling was based upon Ms. Skokos making a late payment of a water bill. Sixth, the Chancellor allowed the attorney-ad-litem for the minor child of the parties to serve both as a witness and an advocate or attorney. *See* Model Rules of Professional Conduct 3.7. Seventh, the Chancellor refused to disqualify the attorney-ad-litem and one of Mr. Skokos' counsel despite the fact that the attorney-ad-litem was an associate or employee of one of this counsel's law partners. *See* Model Rules of Professional Conduct 1.10; *Cinema 5 Ltd.* v. *Cinerama,* 528 F.2d 1384 (2nd Cir. 1976); *United States* v. *Chesire,* 707 F. Supp. 235 (M.D. La. 1989); *First American Carriers* v. *Kroger,* 302 Ark. 86, 797 S.W.2d 669 (1990).

The events of the August 25, 1994 hearing occurring prior to the alleged contemptuous statements are significant also. First, not only did the Chancellor refuse to hear the third motion to recuse, she even refused to allow a record to be made on her refusal and threatened to remove appellant's co-counsel from the courtroom for asking to make a record. Those rulings were based upon the time constraints of the Court.

Second, although the hearing was for final arguments on custody, the Chancellor then allowed counsel for Mr. Skokos to have a rather lengthy hearing on his request to argue a change in temporary custody, despite these time constraints.

Third, the Chancellor implicitly denied having received a copy of the complaint filed against her. When questioned by appellant to the effect that he had sent a copy to her by runner, she then admitted receiving something that was termed a complaint, but said it was not from the Judicial Ethics Commission and therefore she did not know whether a complaint had been filed or not. This seems to be disingenuous, at best.

Fourth, the Chancellor then allowed Mr. Skokos' counsel to have another rather lengthy hearing on his request to argue a change in temporary custody. Presumably these time constraints still applied.

It was at this point that the closing argument began which led to the first two findings of contempt. Although the Majority has quoted portions of the argument concerning these two find-

ings, I believe it is helpful to state the whole discussion.

MR. HODGES: May it please the Court, Judge, this has been a long case and you are now hearing final arguments, as I understand it, on the custody issue.

I thought to myself, how can I convince you coming over here that Mrs. Skokos, a wife of 27 years, ought not to be parted from her 13 year old daughter and I am convinced that I can't convince you because you have made up your mind previously.

I think you made up your mind when you removed this lady and that 12 year old daughter at the time from her marital —

THE COURT: Sir, now, if you —

MR. HODGES: — home on Edgehill

THE COURT: — want to direct comments toward the Court's action in this case you need to do it somewhere else.

MR. HODGES: Well, Your Honor, I am making my closing argument —

THE COURT: And if you want to summarize —

MR. HODGES: — and I think —

THE COURT: If you want to summarize —

MR. HODGES: — I am entitled to do that.

THE COURT: If you want to summarize your case then you may do so. Otherwise, you are going to have to stop or we are going to move on to another side.

MR. HODGES: I am entitled to make —

THE COURT: This is not your forum —

MR. HODGES: — my closing argument.

THE COURT: — to complain about how this Court has handled rulings. Now, if you want to summarize your evidence and present your final argument then you can pre-

sent it. Otherwise, you are going to have to stop and we will move on to another party.

MR. HODGES: *I am entitled, Your Honor, respectfully suggest to you that I am entitled to make my closing arguments.*

You have given me — after 15 months in this case on custody you have given me ten minutes to summarize it and I think I am entitled to use those minutes however I so choose. Now, that is exactly what I think and I am going to continue.

Now, I —

THE COURT: You are in contempt, Mr. Hodges, and you are being assessed a $200.00 fine.

MR. HODGES: Your Honor, I am going to continue and —

THE COURT: — and it is due by 9:00 a.m. —

MR. HODGES: — you just have to —

THE COURT: I know — Mr. —

MR. HODGES: — you have to just find me in contempt.

THE COURT: *First of all, Mr. Hodges, the Court is aware that you have a reporter who follows you apparently every day and who is here now and there is a camera.*

*The Court is aware that you are attempting to have this Court remove you so that you can cause some big media blitz. Now, if that is what you are asking for that is what the Court is about to do but you are going to have to be respectful when you are in here.*

MR. HODGES: *Your Honor, I am trying to be —*

THE COURT: The Court has just assessed —

MR. HODGES: — respectful —

THE COURT: The Court has assessed a $200.00 fine. It is due by 9:00 o'clock in the morning. It has to be paid

down in the Clerk's office.

Now, if you have — if you want to summarize your evidence — you don't get to use your time for closing arguments to criticize this Court's rulings, Mr. Hodges. You can appeal and do that. That is not what the Court set aside the time for.

I know how you feel about the Court's rulings and this Court does not have the time right now to sit and listen to every complaint that you have, Mr. Hodges.

If you want to summarize the evidence, you can do that. You can present any closing argument as to why this Court should award custody to your client.

If you want to complain about the Court's actions then you said you filed the Complaint. You have the media waiting and you can also appeal. You have other remedies but your ten minutes here is not going to be allocated for that.

MR. HODGES: Is what you just said counted against my ten minutes?

THE COURT: You may proceed.

MR. HODGES: Is it counted against my ten —

THE COURT: You may proceed, Mr. Hodges.

MR. HODGES: — minutes?

In spite of what this Court has ruled in the past I think the real issues in this case are very, very clear.

Judge Dudley wrote an article in 1980 were he established four crucial points about child custody that I think still apply today, Judge Dudley, then Chancellor Dudley, now Supreme Court Justice Dudley and he talked about four issues. . . .

And the last thing is love and affection. Let's talk about the first point. Mr. Skokos' moral fitness. Now, where does that begin? That begins when he had sexual relations in their marital home — not in their martial home but in their marital bed.

Now, Judge, are you going to listen to me or are you going to —

THE COURT: That is $50.00, Mr. Hodges, and that is also due in the morning by 9:00 o'clock.

MR. HODGES: Well, I would like for the record to show that —

THE COURT: A $50.00 fine.

MR. HODGES: — you are visiting with Billy the Bailiff.

THE COURT: That is another $50.00 fine so that is a total of $300.00 due at 9:00 o'clock in the morning.

You may proceed. (Emphasis added.)

## LEGAL DISCUSSION

The Majority Opinion contains an excellent and very thorough discussion of the law of contempt in Arkansas. However, I believe it fails to recognize other principles and standards which should apply in reviewing a contempt finding. Contempt is an extraordinary power of the Court which should not be exercised except in cases where the necessity is plain and unavoidable. *Freeman* v. *State*, 188 Ark. 1058, 69 S.W.2d 267 (1934). An action taken which does not affect the administration of justice is not contemptuous. *Norton* v. *Taylor*, 299 Ark. 218, 772 S.W.2d 316 (1989).

The United States Supreme Court in the case of *In re Little*, 404 U.S. 553 (1972), stated, *inter alia*, as follows:

[T]he law of contempt is not made for the protection of judges who may be sensitive for the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate. . . . Trial Courts . . . must be on guard against confusing offensives to their sensibilities with obstruction to the administration of justice. . . .

*Id.* at 555 (citations omitted).

Significantly, the court in *Clark* v. *State*, 291 Ark. 405, 725 S.W.2d 550 (1987), stated as follows:

> [The contempt power] must never be used to place judges above the law. The vital public respect for and faith in judicial institutions will, we believe, be enhanced by the extent to which we are able to solve our problems with patience as opposed to pique, holding our power in reserve.

*Id.* 291 Ark. at 409-10, 725 S.W.2d at 553.

An attorney is not guilty of contempt because of making appropriate objections or exceptions. An attorney is not guilty of contempt by pressing a legitimate argument even though inadequacies in the actions taken by the Court are pointed out. An attorney is not guilty of contempt for attempting to clear up doubts or questions as to the Court's ruling. 17 C.J.S. *Contempt* § 25(b) (1963).

Where a statement is susceptible to more than one construction, and might have been given an innocent construction, any contempt is purged by a disavowal as to contemptuous intent. *Freeman* v. *State, supra.*

Misunderstandings between the Court and counsel are not an appropriate basis for a finding of contempt. *McCullough* v. *Lessenberry*, 300 Ark. 426, 780 S.W.2d 9 (1989); *Lessenberry* v. *Adkisson*, 255 Ark. 285, 499 S.W.2d 835 (1973).

## I.

The first finding of contempt is evidently based in part on the Chancellor's opinion that the beginning of Mr. Hodges' closing statement is a criticism of her prior rulings rather than summarization of evidence and in part upon the Chancellor's feelings that he intended to continue criticizing her rulings.

These opening remarks made before the Chancellor first interrupted Mr. Hodges, are merely prefatory remarks outlining the progress of the case up to that day. Suffice it to say that opening remarks in many cases follow the same format.

Appellant seems to be requesting the Chancellor to step back and think about this issue with an open mind. Looking at her past rulings, this was certainly not an unreasonable request. However, we will never know for sure where counsel was headed with these prefatory remarks as he was cut off too quickly. In

any event the remarks up to this point are by no means contemptuous. They are legitimate arguments even if they point out alleged inadequacies.

The issue then becomes what appellant meant when he kept telling the Court he intended to continue. The Chancellor obviously felt that appellant meant that he was going to continue to criticize her previous rulings.

There is nothing in the record to support this. Given the time constraints placed upon him in making this argument, appellant just as likely might have meant that he wanted to continue on with his closing argument, not that he intended to criticize the Chancellor's previous rulings. We will never know for sure as the Court cut him off and did not inquire of his specific intent.

I do not believe this constitutes contempt. Appellant's statements during this process are susceptible to two interpretations and are ambiguous. This is particularly true where counsel on at least two occasions during this discussion told the Court he was in fact trying to be respectful. *Freeman* v. *State, supra.* Furthermore, this appears to be a clear misunderstanding between counsel and the Court which will not support a finding of contempt. *McCullough* v. *Lessenberry, supra; Lessenberry* v. *Adkisson, supra.*

Third, it seems clear that counsel was trying to make an argument on the content and scope of closing arguments, but was repeatedly cut off by the Court before he could finish. The record is replete with incidents where the Chancellor refused to allow objections or allow Ms. Skokos' counsel to make a record. This is one more. Counsel had a legal right to address the question of the propriety of his argument and make a record thereon.

Fourth, there is nothing in the record which reflects that any untoward interference with the administration of justice occurred.

Even though this was a closed hearing and no reporters or "laymen" were present, the Chancellor's continued remarks (about media being in the hallway and suggestions that appellant had them there to criticize her) seem to indicate that the real problem was the Chancellor's sensitivities to real or perceived criticism rather than appellant's actions and statements in the Courtroom.

This sensitivity is underscored by her later finding that appel-

lant was in contempt by making a statement as innocuous as his client was damned if she did and damned if she didn't and also by the Chancellor's continued assertions throughout the entire course of these proceedings that both counsel for Ms. Skokos were trying to goad her.

For all of these reasons, this is not contempt.

## II.

Shortly into appellant's argument, the Chancellor summoned a bailiff and evidently began talking to him. When appellant observed this, he asked the Chancellor if she were going to listen to him. Such a question could not possibly be contemptuous in and of itself. Moreover, it was necessary to make a record as to what was occurring. Had counsel not made this statement, the record would have been silent as to the fact that the Chancellor was discussing something with the bailiff. Counsel might very well have wanted to get this in the record as a potential ground for appeal. This seems to be noncontemptuous, not only because of the reasons stated in the Majority Opinion as to right of counsel to make a record, but also because it is noncontemptuous in and of itself.

## CONCLUSION

An attorney has no right to be contemptuous to the Court because he is receiving incorrect, ill advised, or unfair rulings or scheduling. An attorney has no right to be contemptuous to the Court because the Court makes unfounded statements about himself or his client. An attorney has no right to be contemptuous merely because a hearing is closed and nonjudicial personnel are not present.

Nevertheless, a court must recognize the difference between forceful advocacy under difficult circumstances and contemptuous behavior. A court must recognize that making a record necessitates questioning a decision, and that is not contemptuous argument. A court must rise above its own sensibilities and not act out of personal pique or anger. A court should give some leeway to what is said in the heat of battle. A court should not make findings of contempt unless there is an interference with the administration of justice.

When looking at the record as a whole and in examining appellant's comments in the context of the entire case, I feel that all of the findings of contempt should be reversed and dismissed.

CORBIN, J., joins in this dissent.