BART F. VIRDEN, Judge liPro se appellant Calvin Carrick appeals from the Pulaski County Circuit Court’s order holding him in criminal contempt for disobeying a court order that he hire an attorney; displaying disorderly, contemptuous, and insolent behavior; and disobeying and resisting the court’s “jury-trial process.” Carrick argues that the trial court erred in finding him in contempt. We agree and, therefore, reverse and dismiss. I. Background These are the facts leading up to the criminal-contempt finding. Carrick had appealed to the circuit court from convictions in the district court and requested a jury trial.[1] On the day set for trial, the court found that Carrick had knowingly and voluntarily waived his right to counsel. After a preliminary discussion about jury instructions, during which Carrick grew | ¡Increasingly frustrated, Carrick said, “[I]f there’s some sort of legal reason that you can find that you cannot instruct the jury on what the legislature has wrote in the law, then I’m going to need a lawyer because I don’t understand what’s going on.” The following colloquy occurred: . CouRt: Mr. Carrick, the Court will have to reschedule this trial so yon can get a lawyer. Appellant: I’m sorry about that, but this is— CouRt: No, no, no. Appellant: This is crazy. CouRt: No, sir, it’s not crazy. This is the law. Let me be real clear to you. There’s a reason why people go to law school. There’s a reáson why you go to medical school. There’s a reason why you go to engineering school. Those skills affeet public safety and public security and anybody can’t, as Grandma Bell used to say, up and do this. This isn’t like shooting pool or shooting marbles where you can just have a thumb and a set of marbles and make it into the game. People go .to law.school for three years. Then they have to pass a bar exam to show they know the law. Jury instructions are part of how trials are made before juries and just because you can find a statute on the internet doesn’t mean that the whole statute goes into the trial. If some part of the statute doesn’t apply, it does not go into the trial. It’s the law, but it’s not the law in that .case and so it’s not crazy. Appellant: Is there some part that you’re saying that I did like that, that did not apply? CouRt: Mr, Carrick, we have done all we need to do. You have asserted your right to counsel. The trial court then dismissed the jury with no objection by the State and asked Carrick whether he could retain an attorney within thirty days. Carrick answered affirmatively. | aAt a report-on-attorney hearing, Car-rick appeared without an attorney and explained that he could not agree to the requested fee. The following colloquy was had: CouRt: Let me ask the public defender to talk to you and let me tell you whether or not you would qualify. If you don’t .qualify, then I will give you another chance to get a,lawyer, but I need to inform you that we need to get this matter moving and so you will get a lawyer and we will proceed or you will get a court-appointed lawyer and proceed, but we will proceed, sir. Appellant: Yes, sir, I certainly do want to proceed and I decided to continue to represent myself. CouRt: We’ve been down that road be- ' fore. You recall I had a jury trial scheduled. I had a jury come in. We were ready to begin the jury trial on the day of trial and that was when you • finally realized that you needed a lawyer. I’m not going down that road ' again. ' Appellant: No, sir. What I— CouRt: Excuse me. So you will have a lawyer one way or another, Mr. Car-rick: You’re going to have a lawyer court-appointed or you’re' going to • have a lawyer hired, but you’re not going to represent yourself, sir. Appellant: I’m not sure how that’s going to work then because that’s my intent. ■ • Court: Well, folks that go to hell intend . to go to heaven, but that doesn’t keep them from going to hell, okay? So let’s get something straight. I really don’t care what you intendi Appellant: That’s fine. [[Image here]] Court: You will not represent yourself and the reason for that is — I’ve made a record — you do not know the law. You do not know court procedures. You don’t know how to do jury instructions. You’ve asked for a jury trial and I’m not going to have you messing-up a.jury trial just because you want to represent yourself. - You have the right to believe you’re smart to represent yourself, but you’re just as wrong as Lucifer |4on Judgment Day. So that will be the end of that. Have a seat. Appellant: So I may not speak? Court: No, sir. Have a seat. Appellant: Okay. All right. Following a discussion- about Carrick’s reluctance to sign an affidavit indicating that he was requesting an attorney, the public defender reported that Carrick felt that he could afford, to hire an attorney. The following was said: Court: Well, I appreciate Mr. Carrick’s devotion to truth.!- Well, Mr. Carrick, I’m going to give you one week to find a lawyer.... Court: Mr, • Garrick, come back in a week with.a lawyer, since you say you are able to afford one,, but come back in one week one way or [another]. Appellant: I will come back one way or the-other, sir. Court: Thank you, sir. At the next report-on-attorney héaring, the following colloquy occurred: Appellant: I don’t have, a lawyer, Your Honor, I’m representing myself. CouRt: No, you’re not. We plowed that • field_ I’ve ruled that you’re incompetent to represent yourself. You will mot represent yourself. The next question is what will happen. I have previously directed you to talk with the public defender and you said you were not willing to take á public defender. . • •.. T am going'to have you sit'down with the public defender again and have the public defender do an assessment of your means. Mr. Thompson, you will sit down with Mr. Carrick and assess his means and whether he qualifies for a public defender. ' Appellant:" Your Honor — ' IeCquRt: Do not [interrupt] me, Mr. Carrick, when I’m talking. I will not tell you this one other time. The next time you do that, I will have- you gagged. [[Image here]] CouRt: Mr. Carrick, I don’t care if you request a lawyer or not. Under the Constitution of the United States, which out ranks [sic] you, I have the authority to appoint a lawyer for you and, sir, I promise you, I am going to exercise every iota of the authority I have. You will not leave this courthouse without a lawyer today. And you, sir, can be assured of that. We’re iñ recess for 15 minutes. Appellant: Will the Court review the case of Faretta during a recess? CouRt: No, sir. Appellant: It’s a Supreme Court— CouRt: Excuse me, sir. I am not reviewing any case unless your lawyer submits it to me. You want me to review something, get a. lawyer. After additional questions concerning Car-rick’s assets, the trial court determined that Carrick was not indigent. Upon determining that Carrick was not entitled, to a court-appointed attorney after all, the judge, noting that he had “previously ordered. [Carrick] to present [himself] [there] -with counsel,” held Carrick in contempt. In a written order,' the trial court found that, not only had Carrick' disobeyed a lawful order to hire counsel; he had exhibited disorderly, contemptuous, and insolent behavior and that he had willfully- resisted and disobeyed the court’s “jury-trial process.” ' ' • II. Criminal Contempt Every court of record shall have the power to punish, as for criminal, contempt, persons guilty of the following acts, and no others: (1) disorderly, contemptuous, or insolent behavior committed during the court’s sitting, in its immediate view and presence, and |fidirectly tending to interrupt its proceedings or to impair the respect due to its authority; (2) any breach of the peace, noise, or disturbance directly tending to interrupt its proceedings; (3) willful disobedience of any process or order lawfully issued or made by it; (4) resistance willfully offered by any person to the lawful order or process of the court; and (5) the contumacious and unlawful refusal of any person to be sworn as a witness and when so sworn a similar refusal to answer any legal and proper' interrogatory. Ark.Code Ann. § 16-10-108(a) (Repl. 2010). Section 16-10-108(c) provides that contempt Committed in the immediate view and presence of the 'court may be punished summarily, but that, in other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make a defense. See, e.g., Allison v. DuFresne, 340 Ark. 583, 12 S.W.3d 216 (2000). Although the trial court treated this as direct criminal' contempt — given the summary punishment — it was, in fact, indirect criminal contempt because, to'the extent that .the trial court believed it had issued a definite order, Carrick’s failure to hire and return to court with an attorney was not committed in the immediate view and presence of the court. The trial judge would have had to consider extrinsic evidence not within his personal knowledge and observations to determine the willfulness of Car-rick’s actions. See generally John E, Theuman, Annotation, Attorney’s Failure to Attend Court, or Tardiness, as Contempt, 13 A,L.R.4th 122, 168-64 (1982). Because Carrick’s actions would have required proof to establish his mental state, it was indirect criminal contempt; however, Carrick does not challenge on appeal the lack of notice and opportunity to be heard. See, e.g., Ark. Dep’t of Human Sens. v. Shipman, 25 Ark. App. 247, 756 S.W.2d 930 (1988). Therefore, we do not address this aspect of the |7criminal-cori-tempt finding. Here, the trial court found in its written order that Carrick had willfully resisted and disobeyed a lawful order by refusing to obtain counsel; that he had exhibited disorderly, contemptuous, and insolent behavior; and that , he had willfully resisted and disobeyed the court’s jury-trial process. In a review of a case of criminal contempt, we view the record in the light most favorable to the trial judge’s decision and sustain that decision if it is supported by substantial evidence. Atkinson v. Lofton, 311 Ark. 56, 842 S.W.2d 425 (1992). A. There Was No Decisive Order Definite in its Terms Before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties imposed on him, and the command must be express-rather than implied. Hodges v. Gray, 321 Ark. 7, 901 S.W.2d 1 (1995). Given the inconsistency between the trial court’s oral instruction that Carrick return to court .with hired counsel and its continued assessment.of Carrick’s indigent status to determine whether an attorney could be appointed, the trial court’s directive was not entirely clear. The dissent characterizes the trial court’s instruction as an “expressly defined command,” yet the colloquies, at a glance, show that the trial court said the following: (1). “you will need to get a lawyer and we will proceed or you will get a court-appointed lawyer and proceed,” (2) “you will have a lawyer one way or another,” (3) “[yjou’re going to have a lawyer .court-appointed or you’re going to have a lawyer hired,” (4) “come back in a week with a lawyer since you say you are able to afford- one, but come back in one week one way or [another],” and |r(5) “[y]ou will not leave this courthouse without a lawyer today.”[2] The only thing that is clear from the various directives given is that the judge adamantly refused to allow Carrick to represent himself because he had no legal knowledge or skill. Even assuming that the trial court’had issued a decisive order that Car-rick hire' an attorney,[3] we are convinced that this case presents, an exception .to the general rule-regarding contempt, which is that this court “will not look behind the order to determine whether it is •valid.” James v, Pulaski Cty, Circuit Court, 2014 Ark. 305, at 4-5, 439 S.W.3d 19, 23. While the dissent relies on this.'general rule, we note that there is an exception, to the general rule: “If the contemnor -was making a legitimate and successful challenge to the validity of the Rorder, we may look beneath the order and recognize substantive error as a defense to contempt.”[4] Etoch v. State, 332 Ark. 83, 88, 964 S.W.2d 7.98, 801 (1998). To.the extent that there was a decisive order definite in its terms, in looking behind this order, we hold that the trial court had no authority to direct Carrick to hire an attorney because it would have effectively denied him his right to, self-representation and, thus, constituted substantive error. 1. Right to Self-Representation ■ The Sixth Amendment right to the assistance of epunsel implicitly embodies a “correlative right to dispense with a lawyer’s help.” Faretta v, California, 422 U.S. 806, 814, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting Adams v. .United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L,Ed. 268 (1942)). Forcing a lawyer on an unwilling defendant is contrary to his basic right to defend himself if he truly, wants to do so. Faretta, 422 U.S. at-817, 95 S.Ct. 2525. Here, the record shows that the judge had conducted a Faretta inquiry prior to trial and determined that Carrick had made a knowing and intelligent waiver'of his right to counsel, thus permitting him to proceed pro se. At the second report-on-attorney hearing, however, the judge ruled that Carrick was “incompetent” to represent himself.[5] Con- sidering what the judge had said at the first hearing, | inthe judge’s use of the word “incompetent” must have pertained to Car-rick’s lack of legal knowledge and skill. Faretta plainly provides, however, that technical legal knowledge is not relevant to an assessment of a defendant’s knowing exercise of the right to defend himself. Id. at 836, 95 S.Ct. 2525. As such, the trial court’s refusal to permit Carrick to represent himself was based on, irrelevant concerns.[6] In Barnes v, State, 258 Ark. 565, 528 S.W.2d 370 (1975), Barnes assured the trial court that he would retain counsel; he hired an attorney but then sought to fire that attorney on the day before trial; and, while he had previously rejected offers of an appointed attorney, he later accepted the representation. On the day of trial, however, Barnes requested that he be permitted to represent himself because he had been “lied to” and “deceived” by the attorneys. The trial court inquired into Barnes’s knowledge of basic rules of evidence and trial procedure and concluded that he knew nothing about such things and was not qualified to represent himself. The court últimately permitted Barnes .to read an opening statement, In conduct voir dire, and make a closing argument, but the court refused to permit -'him to examine witnesses. Barnes protested the assistance of a public defender and asserted that he had a constitutional right to examine witnesses, but the court refused to grant his request. On appeal, the supreme court noted that the Faretta Court had concluded that “a state may not constitutionally [hale] a person into its criminal courts and there force a lawyer upon him. when he insists-that he wants to conduct his own- defense.” Barnes, 258 Ark.-at 570, 528 S.W.2d at 374. In- reversing the trial court, the Arkansas Supreme Court pointed out that Even though we might agree with the 'trial court, the public defender, our attorney general, and the 'dissenters' in Faretta that such' an election 'is pure folly and that only confusion can result, the test whether the election has been intelligently made is not the wisdom of the decision of its effect upon expeditious administration of justice. - His technical legal knowledge is totally irrelevant in the assessment of his knowing exercise of the right to defend himself. The record here clearly discloses that the circuit judge pointed out to the defendant his lack of knowledge of procedures and rules of evidence - and the hazards attendant upon his choice. Barnes’ request was-not refused because it was riot knowingly arid intelligently made. It was refused in an effort to protect Barnes from his ignorance as to rules of evidence and procedures in presenting evidence. Id. at 570-71, 528 S.W.-2d at 374. Here, at both report-on-attorney hearings, Carrick’s intent to represent himself was clear and unequivocal. He had already been made aware of the dangers of self-representation prior to trial. His lack of knowledge of the law, court procedures, ■and jury instructions — the trial court’s basis for refusing to permit Carrick to represent himself — -was irrelevant to whether he had made another knowing and intelligent waiver of his right to counsel. We conclude that the trial court did. not have the authority to order Carrick to hire an attorney because such an order would have effectively denied him his right to self-representation. The 112trial court erred in this regard and otherwise erred in holding Carrick in criminal contempt. B. Carrick’s Behavior,Was Not-Disorderly, Contemptuous, or Insolent ■ , - We do not believe that there is any substantial evidence that Carrick displayed behavior that was disorderly, contemptuous, or insolent in asserting his right to defend himself. See Faretta, supra. While it is true that Carrick persisted in his desire to represent himself, “a court must recognize the difference between forceful advocacy under difficult circumstances and contemptuous behavior. A court, must recognize that making a record necessitates questioning, a decision, and this is not contemptuous argument.”[7] Carrick was unyielding in his desire to represent himself, but the record does not disclose that he was rude or disrespectful in expressing that continued desire. Jn fact, the record reveals that Carrick was polite, and even deferential, and that he did not interrupt the judge. C. Carrick pid Not Disobey or Resist the “Jury-Trial Process’-’ We fail to see how the “jury-trial process” was disobeyed or resisted by Car-rick. It appears that any delay was brought about by the judge himself in offering Carrick time to either retain counsel ■ or accept court-appointed counsel. Also, to the extent that Carrick disrupted a jury trial at the outset, we note that it >is not uncommon for seasoned attorneys to request and be granted a continuance on the day of trial, especially where, as here, there is no objection by the State. Further, the so-called: contemptuous behavior occurred at two report-on-attorney hearings, the purpose of which was to hear Carrick’s progress on retaining counsel or accepting , court-appointed counsel. Car-rick’s insistence on representing | ^himself did not obstruct or interrupt the “jury-trial process,” considering the purpose of those hearings and Carrick’s assertion that he was ready to proceed pro se. III. Conclusion In Clark v. State, 291 Ark. 405, 725 S.W.2d 550 (1987), the supreme court cited with approval the following language from In re Larry Little, 404 U.S. 553, 555, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972): [T]he vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an ifnminent, hot merely a likely, threat to the .administration of justice. The danger must not be remote or even probable; it must immediately imperil.... Trial courts ... must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice. Clark, 291 Ark. at 408, 725 S.W.2d at 553 (internal citations omitted). Carrick’s persistence in wanting to represent himself posed no immediate threat to the administration of justice. To summarize, there-was no decisive order definite in its terms. Nevertheless, to the extent that there was, we may look behind it to recognize substantive error in the trial court’s unauthorized attempt to order Carrick to hire an attorney because such an order would have effectively denied him his right to self-representation.[8] Therefore, we hold that the trial court erred in this regard and otherwise erred in holding Carrick in contempt for all of the reasons stated above. Accordingly, we reverse and dismiss. Reversed and dismissed. Harrison, Glover, Hixson, and Hoofman, JJ., agree. Kinard, J., concurs. Gladwin, C.J., and Abramson and Whiteaker, JJ., dissent. . The parties agree that Carrick’s underlying charges were ultimately nolle prossed. ■ . The colloquies more accurately reflect what was said, as opposed to the subsequently entered contempt order relied on by the dissent. . Even if the trial court’s directives had been clear, there is some question whether an order even existed that Carrick could be, found to have violated given that it was never reduced to writing or entered of record. See, e.g., Bartley v. State, 73 Ark. App. 452, 45 S.W.3d 387 (2001) (noting that a form providing notice that the appellant must appear at his arraignment with an attorney "was not a court order in that it was neither signed by a judge nor filed for record.”); see also Watts v. State, 2016 Ark. App. 16, 480 S.W.3d 212 (Where no initial sentencing order had ever been entered placing the defendant on probation, her probation could not thereafter be revoked because an oral order is simply not effective until entered of record.). Of course not every order must be in writing, e.g., where contemptuous behavior is committed in the immediate view and presence of the court. The dissent points to Thacker v. State, 2015 Ark. App. 573, 473 S.W.3d 583, as an example of this court’s "affirming] the circuit court's use of direct contempt power where a witness refused to comply with the court’s oral direction to pull up his pants.” (Emphasis in original). .This court actually affirmed the trial court’s refusal to grant .the appellant’s motion for a mistrial on the basis that her alibi witness was taken into custody for contempt in front of the jury, which the appellant argued was an improper comment on the evidence; In that case,-the alibi witness’s pants "were ‘dragging’ again” as he rose from the witness stand to leave the courtroom. That case is readily distinguishable, however, in that it involved direct criminal contempt because the contemptuous behavior occurred in front of the judge and jury. Here, we are dealing with indirect criminal contempt. . Although not discussing the exception to the general rule, the following is an example of an appellate court looking behind and revers- • ing a trial court’s contempt order: Norton v. Taylor, 299 Ark. 218, 772 S.W.2d 316. (1989) .(reversing criminal-contempt finding for disobeying court order that appellant attorney represent a nonindigent defendant because trial court had no authority under those particular circumstances to make the order and where administration of justice would not have been disrupted given that appellant had állowed sufficient time for defendant to obtain other counsel), . In Indiana v. Edwards, 554,11.8. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), an attorney was forced on Edwards despite his repeated requests to" represent himself. Noting ‘that the rights in Faretta are not absolute; the Supreme Court held that the United States Constitution “permits states to insist upon ' representation by counsel for those who suffer from severe mental illness to the point where they are not competent to' conduct trial proceedings by themselves.” Edwards, 554 U.S. at 171, 128 S.Ct. 2379., In Johnson v. State, 2015 Ark. App. 677, 476 S.W.3d 807, the trial court had denied Johnson’s request to represent himself based on his lack of legal knowledge and skill, as well as a mental evaluation indicating that Johnson was mildly mentally retarded and suffered from schizoaffective disorder. Distinguishing Edwards, this court reversed and remanded for a new trial because Johnson did not suffer from severe mental illness and his limited legal experience was irrelevant. Here, there is no evidence or suggestion that Carrick suffers from any mental illness that would render him incompetent to represent himself.' ; . The dissent refers to Carrick’s “revocation of his right to self-representation” and states that he "rescinded his invocation of the right to self-representation.” Read in context, it is obvious that Carrick only "requested” an attorney out of utter frustration. In any event, the.dissent cites no authority to support the suggestion that Carrick was not permitted to change his mind. . Hodges, 321 Ark. at 27, 901 S.W.2d at 11 (Arnold, S.J., dissenting). . The dissent asserts that the majority opinion stands for the proposition that litigants may defy court orders with impunity. The focus of our opinion, however, should be on the rare application of an exception and the reining in of a judge who, in this instance, attempted to take his contempt power too far.